# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL G. ALLFORD,** | **CASE NO. 1:14-CV-00024-AWI-JLT** |
| **Plaintiff** | **ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS** |
| **v.** | |
| **ROBERT BARTON, INDIVIDUALLY AND IN THE CAPACITY OF INSPECTOR GENERAL; THE CALIFORNIA OFFICE OF INSPECTOR GENERAL, AN INDEPENDENT DEPARTMENT OF THE STATE OF CALIFORNIA; ROY WESLEY; JAMES SPURLING; AND MAY GORDON,** | **(Docs. 21, 22, 23, 24, and 25)** |
| **Defendants** | |

## I. INTRODUCTION

This is an action for damages and injunctive relief by plaintiff Michael Allford ("Plaintiff") against defendant California Office of the Inspector General ("OIG"), and individuals Robert Barton ("Barton"), Roy Wesley ("Wesley"), James Spurling ("Spurling"), and May Gordon ("Gordon") (the "individual Defendants") (collectively, "Defendants"). Doc. 17. Plaintiff was employed by the OIG as a Special Assistant Inspector General. Doc. 17, 3:20. Plaintiff's First Amended Complaint ("FAC") alleges Plaintiff was terminated from employment by the OIG in violation of Plaintiff's Constitutional rights and a number of statutes, including: the Americans With Disabilities Act ("ADA"), the California Fair Employment and Housing Act ("FEHA"), and the California Unruh Act. Doc. 17. Defendants filed individual motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rules of Civil Procedure

12(b)(6) ("Rule 12(b)(6)"). Docs. 21-25. The matter was taken under submission without oral argument.

## II. BACKGROUND

**A. Procedural History**

On January 6, 2014, Plaintiff filed a complaint seeking damages and injunctive relief due to alleged discrimination and retaliation on the part of Defendants. Doc. 1. Defendants filed and served a motion to dismiss on August 14, 2014. Doc. 14. Plaintiff responded by filing the FAC on September 4, 2014. Doc. 17. Based on the FAC, the Court denied the motion to dismiss as moot. Doc. 18. Plaintiff's FAC alleges the following grounds for relief: 1) a claim of deprivation of rights secured by the Constitution – against individual Defendants; 2) a claim of employment discrimination and retaliation in violation of the Americans with Disabilities Act (ADA) – against Defendants; 3) a claim of employment discrimination in violation of the California Fair Employment and Housing Act – against defendant OIG; 4) a claim of retaliation in violation of the California Fair Employment and Housing Act – against defendant OIG; 5) a claim of harassment in violation of the California Fair Employment and Housing Act – against Defendants; and 6) a claim of conspiracy to deprive Plaintiff of rights secured by the California Unruh Act – against Defendants. Doc. 17, 24-34.

Defendants' motions to dismiss, filed on October 23, 2014, are directed at Plaintiff's first, second, fifth, and sixth claims. Docs 21-25. Individual Defendants filed motions to dismiss the first and second claims pursuant to Rule12(b)(6). Doc. 22, 3. The legal arguments supporting these motions are the same. The OIG filed a motion to dismiss the second claim pursuant to Rule 12(b)(1) or Rule 12(b)(6). Doc. 21, 1. Gordon, Spurling, and Wesley filed motions to dismiss the fifth claim pursuant to Rule 12(b)(6). Doc. 23-25. The arguments supporting the motions to dismiss the fifth claim are not the same and must be reviewed separately. Defendants all filed motions to dismiss the sixth claim pursuant to Rule 12(b)(6). Docs. 21-25. The legal argument supporting the motion to dismiss the sixth claim is the same. Plaintiff filed a motion in opposition to Defendants' motions on November 10, 2014. Doc. 28. Defendants replied on November 17, 2014. Doc. 29.

**B. Factual Allegations**

Plaintiff was employed by the OIG as a Special Assistant Inspector General beginning on July 12, 2005. Doc. 17, 3:20. In March 2009, after period of illness, Plaintiff resumed full duties at the OIG. Doc. 17, 5:4-7. Subsequent to his return to duty, Plaintiff became concerned that the OIG and Barton were not maintaining the strict privacy requirements around Plaintiff's physical and/or mental medical status. Doc. 17, 5:18-22. Barton occupied the position of Senior Assistant Inspector General – Central Region, Acting Inspector General, or Inspector General at the OIG during Plaintiff's employment. Doc. 17, 3:25-4:2.  Plaintiff's concerns were based on oral and written statements made by Barton. Doc. 17, 5:13. In particular, Plaintiff was concerned that Barton was sharing misinformation about Plaintiff's fitness for duty and Barton was not committed to maintaining the privacy of Plaintiff's medical records. Doc. 17, 5:21-28. In August, 2011, Barton expressed disapproval with Plaintiff for Plaintiff having taken action in an administrative hearing with the Vertical Advocate. Doc. 17, 6:19-21. Plaintiff found Barton's involvement in the administrative hearing unusual and believed this was due to Barton's perception that Plaintiff was not able to fully perform his employment duties. Doc. 17, 6:15-18 and 7:5-9.

Around February and March 2012, Plaintiff voiced opposition to Gordon based on her inquiry into the details of Plaintiff's tuberculin skin test ("TB test"). Doc. 17, 7:27-8:2. Plaintiff opposed any inquiry beyond whether Plaintiff was current with testing and whether the test results were negative. Doc. 17, 8:4-6. At the time, Gordon occupied the position of Senior Assistant Inspector General – Central Region at the OIG and was Plaintiff's direct supervisor. Doc. 17, 4:13-15 and 8:1. On March 1, 2012, Plaintiff advised the employee at the OIG responsible for maintaining medical records that he opposed the delivery of his medical information to Gordon. Doc. 17, 8:8-12. According to Plaintiff, he voiced his opposition to preserve the confidentiality of his medical records and to establish to his supervisors that he opposed disclosure of mental or medical records. Doc. 17, 7:21-27.

On March 1, 2012, Plaintiff informed Wesley that he believed his supervisors were violating the ADA. Specifically, he indicated that his supervisors were sharing his mental or

3

medical records, and they were suggesting to other employees at the OIG that Plaintiff suffered from a mental disability that prevented him from adequately performing his employment duties. Doc. 17, 9:1-18. Plaintiff alleges Wesley responded in a hostile and threatening tone, and Wesley instructed Plaintiff to present the complaint through the appropriate channels. Doc. 17, 11:25-28 and 12:1. Wesley occupied the position of Chief Deputy Inspector General or Acting Chief Deputy Inspector General at the OIG during Plaintiff's employment. Doc. 17, 4:4-7. Around the same time, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing. Doc. 17, 10:10-15. The complaint alleged Barton had disclosed to OIG employees that Plaintiff was incapable of adequately performing his employment duties due to a perceived mental and physical disability. Doc. 17, 9:24-28 and 10:1-5.

Plaintiff alleges that officers at the OIG became aware his opposition to Gordon's and Barton's conduct, as well as his complaint with the EEOC, and retaliated against Plaintiff. Doc. 17, 10:16-21. Plaintiff also alleges that individual Defendants created a hostile work environment that included repeated negative comments and attempts to adopt and enforce new employment policies. Doc. 17, 16:11-16. These new policies created difficulties for Plaintiff in the performance of his duties and made it an act of insubordination for Plaintiff to report perceived acts of discrimination to Barton or to oppose perceived acts of discrimination. Doc. 17, 11:12-16 and 16:11-16.

Barton counseled and directed Plaintiff not to be too concerned with the accuracy of reporting in the OIG Computerized Reporting System. Plaintiff alleges Barton did this to make it appear Plaintiff was inadequately performing his duties. Doc. 17, 11:16-24. Wesley instructed Gordon to scrutinize Plaintiff's timekeeping activities to identify justifications for adverse actions against Plaintiff. Doc. 17, 12:9-15. On March 28, 2012, Wesley and Gordon criticized Plaintiff's time records when Plaintiff reported his time spent at various California State Prison sites. According to Plaintiff, he traveled to these various sites so that he would be aware of proper safety precautions, a necessary part of his employment duties. Doc. 17, 12:24-28.

In July 2012, Plaintiff was admonished by Gordon for using foul and inappropriate

language in Plaintiff's workspace. Doc. 17, 13:26-28 and 14:1-2. As a result of this incident, Plaintiff received a downgraded employment performance evaluation from Gordon. Doc. 17, 14:8-10. The evaluation noted that Plaintiff should be mindful of the language and tone he used in his working communications and downgraded the quality of work performed by Plaintiff. Doc. 17, 14:14-18.

In September 2012, Plaintiff requested to use a private vehicle for transportation to and from the various work sites. Doc. 17, 16:20-26.  Gordon denied this request without providing a reason. Doc. 17, 16:27-28. Plaintiff subsequently learned that some of his confidential personnel medical records were located in an unsecure part of Plaintiff's personnel file and were available to be viewed by all OIG employees. Doc. 17, 17:18-24. Plaintiff expressed his anger and demanded the files be immediately removed. Doc. 17, 18:7-14. Barton indicated the files would be removed and the error was not harmful. Doc. 17, 18:17-21. One month later, Plaintiff was admonished for not personally attending a meeting. Doc. 17, 19:24. Plaintiff attempted to attend the meeting by phone. Doc. 17, 20:1. Gordon indicated the meeting could not be attended by telephone. Doc. 17, 20:4-7. Plaintiff claims the meeting location had been rescheduled and Plaintiff was not notified of the rescheduling. Doc. 17, 19:27-28.

In December 2012, Gordon told Plaintiff he could not travel to a job site in San Luis Obispo County for the purpose of attending a meeting. Plaintiff disagreed with Gordon's assessment because Plaintiff had customarily attended the meeting. Plaintiff traveled to the meeting despite Gordon's instruction. Doc. 17, 20:19-28. Gordon, Wesley, and Barton admonished Plaintiff for disobeying instructions. Doc. 17, 21:5-9. The next month, Gordon admonished Plaintiff for not consulting with her prior to making an entry into the OIG system. Plaintiff's entry caused Gordon to have to delete certain records. Doc. 17, 21:14-23.

On or about March 21, 2013, Plaintiff served, or caused to be served, upon the OIG a Summons and Complaint which was filed in the Superior Court of California alleging discriminatory and retaliatory practices. Doc. 17, 21:27-28 and 22: 1-4. The next day, the OIG placed Plaintiff on administrative time off in connection with an ongoing investigation the OIG was performing. Doc. 17, 22:5-12. Plaintiff was also served with a Notice of Adverse Action. The

notice set forth a termination date of May 7, 2013 for Plaintiff's employment at the OIG. Doc. 17, 22:13-15. Plaintiff was instructed to vacate his office. After Plaintiff vacated his office, a key was found broken off in a lock in Plaintiff's desk. Plaintiff was accused of destroying state property. Doc. 17, 22:19-24. On May 7, 2013 Plaintiff was involuntarily separated employment at the OIG. Doc. 17, 3:23.

### III. LEGAL STANDARD

**A. Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). This rule does not require a claimant to set out in detail the facts upon which he bases his claim. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The pleadings need only give the opposing party fair notice of a claim and the claim's basis.  *Conley v. Gibson*, 355 U.S. at 47; *Sagana v. Tenorio*, 384 F.3d at 736 (9th Cir. 2004); *Fontana v. Haskin,* 262 F.3d 871, 877 (9th Cir. 2001). However, where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed.R.Civ.P. 12(b)(6). A dismissal for failure to state a claim brought under Rule 12(b)(6) may be based on either: the lack of a cognizable legal theory, or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When the court reviews a complaint under Rule 12(b)(6), all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). However, the court need not accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129

S. Ct, 1937, 1949-50 (2009); *see also Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136 (9th Cir. 2003).

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  In other words, leave to amend need not be granted when amendment would be futile. *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir. 2002).

**B. Rule 12(b)(1)**

Rule 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1). It is a fundamental precept that federal courts are courts of limited jurisdiction. *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).  Limits upon federal jurisdiction must not be disregarded or evaded.  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Vacek v. United States Postal Serv.*, 447 F.3d at 1250. Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Savage v. Glendale Union High School Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself.  *See Wolfe v. Strankman*, 392 F.3d at 362; <u>Meyer</u>, 373 F.3d at 1039.  However, courts do not accept the truth of legal conclusions merely because they are cast in the form of factual allegations.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

# IV. DISCUSSION

## A. Violation of ADA – Plaintiff's Second Cause of Action

Plaintiff's second cause of action seeks recovery against Defendants under 42 United States Code Section 12203 ("Section 12203"). Doc. 17, 28:16. Section 12203, under Title V of the ADA, prohibits retaliation against individuals who oppose unlawful acts under the ADA. *Louie v. Carichoff*, 2006 WL 662742, at *2 (E.D. Cal. Mar. 16, 2006). "Congress divided the ADA into five sections: private sector employment under Title I; public programs and activities under Title II; public accommodations under Title III; telecommunications under Title IV; and miscellaneous provisions under Title V." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1070 (D. Haw. 2000), citing Americans with Disabilities Act of 1990, Pub.L. No. 101–336, 104 Stat. 327 (1990).

42 U.S.C. Section 12203 provides:

(a) Retaliation
No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. . .

(c) Remedies and procedures
The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III, respectively.

42 U.S.C. § 12203 (2012).

Plaintiff asserts the Title V retaliation claim based on Defendant's violations of Title I and Title II of the ADA. Doc. 17, 28:8-13. The OIG and individual Defendants have raised separate legal arguments in support of their motions to dismiss.

## 1. OIG - Sovereign Immunity under the Eleventh Amendment

Defendant OIG argues Plaintiff's second cause of action should be dismissed pursuant to either Rule12(b)(1) or Rule 12(b)(6). Doc. 21, 5:2-16. Eleventh Amendment sovereign immunity underpins the OIG argument for dismissal. Doc. 21, 5:2-16. The Ninth Circuit has held that Eleventh Amendment immunity "does not implicate a federal court's subject matter jurisdiction in

any ordinary sense." *ITSI T.V. Prods., Inc. v. Agric. Associations*, 3 F.3d 1289, 1291 (9th Cir. 1993). However, "it is unclear whether a motion to dismiss based on Eleventh Amendment immunity is a [Rule] 12(b)(1) motion or a Rule 12(b)(6) motion." *Garcia v. Hawaii Health Sys. Corp.*, 2014 WL 3672119, at *2 (D. Haw. July 23, 2014).

The Court need not determine whether Rule 12(b)(1) or Rule 12(b)(6) should be applied to defendant OIG's motion to dismiss. The issue of whether sovereign immunity precludes Plaintiff's claim against the OIG can be evaluated as a facial attack pursuant to Rule 12(b)(1). A facial attacked is limited to the allegations in the complaint, which is the same limit imposed under Rule 12(b)(6) when a court evaluates whether a complaint has failed to state a claim based on a legally cognizable theory. As such, the standards under either rule are essentially the same for purposes of this motion. The Court will evaluate the motion to dismiss based on the allegations in the complaint.

The Supreme Court has interpreted the Eleventh Amendment as barring suits by citizens against a state in federal court. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72 (2000); *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 669–70 (1999). The sovereign immunity states are entitled to under the Eleventh Amendment also applies to suits against governmental agencies that are state agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *See e.g. Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. at 363; *Kimel v. Florida Bd. of Regents*, 528 U.S. at 72. To determine whether a governmental agency is a state agency – as opposed to an agency of a municipality or county, which are not entitled to sovereign immunity – "the following factors must be examined: whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity." *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). Of the five factors, "[t]he most 'crucial question ... is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury.'" *Belanger v. Madera Unified Sch. Dist.*, 963

1    F.2d 248, 251 (9th Cir. 1992), citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982).

2    The OIG is an independent governmental agency appointed by the Governor that qualifies as a

3    California Agency under California Government Code section 82049. Cal. Penal Code § 6125;

4    Cal. Gov. Code § 82049.  The budget for the OIG is developed in consultation with the California

5    Department of Finance. Cal. Penal Code § 6126 (h). Funding for the OIG is appropriated from the

6    Legislative, Judicial, and Executive section the Governor's annual budget. *See* Governor's Budget

7    2015-16: State Agencies, 0552 Office of the Inspector General, http://www.ebudget.ca.gov/2015-

8    16/StateAgencyBudgets/0010/0552/department.html. Because the OIG is a governmental agency

9    of California that is funded from the annual budget, a judgment against the OIG appears to impact

10   the state treasury.[1] As such, the OIG is entitled to sovereign immunity under the Eleventh

11   Amendment.

12        A state's sovereign immunity may be overcome in several ways, two of which are: when a

13   state waives immunity and consents to suit, or when Congress validly abrogates Eleventh

14   Amendment immunity. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. at 363-64; *Kimel

15   v. Florida Bd. of Regents*, 528 U.S. at 73. Although waiver of state immunity does not need to be

16   express, "waiver must be unambiguous." *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754,

17   758 (9th Cir. 1999). "[A] state may implicitly waive its sovereign immunity 'by conduct that is

18   incompatible with an intent to preserve that immunity.'" *Douglas v. California Dep't of Youth

19   Auth.*, 271 F.3d 812, 821 (9th Cir.) amended, 271 F.3d 910 (9th Cir. 2001), citing *Hill v. Blind

20   Indus. & Servs. of Maryland*, 179 F.3d at 758. In the employment context, California has

21    not waived Eleventh Amendment sovereign immunity for claims brought under the ADA, even

22   though the state has implicitly waived sovereign immunity for claims brought under other federal

23   statutes, such as the Rehabilitation Act. *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001)

24   (holding California has not waived sovereign immunity for claims brought under Title I of the

25   ADA when the state raises immunity as a defense); *Douglas v. California Dep't of Youth Auth.*,

26   271 F.3d 812, 819 (9th Cir. 2001) (finding California has implicitly waived sovereign immunity

27   ---

[1] The Court notes that Plaintiff does not dispute the fact that the OIG is a state agency for purposes of Eleventh
28   Amendment sovereign immunity.

for claims brought under the Rehabilitation Act by California's acceptance of Rehabilitation Act funds). The OIG's sovereign immunity has not been waived in this cause of action because Plaintiff's claim is based on an alleged violation of the ADA and the OIG timely raised the immunity defense.

In order to abrogate state immunity from a federal law, there must be a pattern of violations "by the States which violates the Fourteenth Amendment," and the remedy that Congress imposes through the statute "must be congruent and proportional to the targeted violation." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. at 374. Congress exceeded its authority by attempting to abrogate State immunity for employment claims based on Title I of the ADA. *Id.* at 372; *Demshki v. Monteith*, 255 F.3d at 988. The Ninth Circuit has held that if a claim is brought under Title V of the ADA, and the claim is predicated on alleged violations of Title I, Congress' failure to abrogate State immunity extends to Title V of the ADA. *Demshki v. Monteith,* 255 F.3d at 988. Plaintiff's second cause of action alleging a violation of Title V, based on defendant OIG's violation of Title I, is subject to Eleventh Amendment immunity. As such, to the extent that Plaintiff's second cause of action against the OIG is based on a violation of Title I, the claim must be dismissed.

Plaintiff also asserts a claim against defendant OIG under Title V based on an alleged violation of Title II. Doc. 17, 28:12-17. Congress validly abrogated sovereign immunity under the Eleventh Amendment for claims brought under Title II of the ADA. *Tennessee v. Lane*, 541 U.S. 509, 533 (2004) (holding Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment); *see also Phiffer v. Columbia River Corr. Inst.,* 384 F.3d 791, 792 (9th Cir. 2004). However, while Title I "prohibits disability discrimination in employment," Title II has a different statutory focus and "prohibits disability discrimination in the provision of public services." *Okwu v. McKim*, 682 F.3d 841, 845 (9th Cir. 2012). The Ninth Circuit has found that "Congress unambiguously expressed its intent for Title II not to apply to employment" relationships. *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1173 (9th Cir. 1999) (dismissing a claim under Title II of the ADA brought by a terminated employee against the

1  prior employer). Plaintiff's claim under 42 U.S.C. Section 12203 is based on his prior employment

2  relationship with defendant OIG. As such, Plaintiff cannot assert a claim against the OIG under

3  Title II of the ADA.

4      Accordingly, the court finds that Plaintiff's second cause of against defendant OIG for

5  violation of Section 12203 is subject to dismissal with prejudice.

6

7  **2. Individual Defendants – No Individual Liability Under ADA**

8      Individual Defendants argue Plaintiff's second cause of action should be dismissed

9  because the ADA does not provide for liability against individuals. Therefore, Plaintiff has failed

10  to state a claim based on a cognizable legal theory. *See e.g.* Doc. 23, 9:2-23. Individual

11  Defendants' motion to dismiss is evaluated pursuant to Rule 12(b)(6).

12      As in the case with the OIG, Plaintiff asserts a Title V retaliation claim against the

13  individual Defendants based on violations of Title I and Title II of the ADA. Doc. 17, 28:8-13.

14  Plaintiff's claim arises out of an employment relationship. Doc. 17, 24-34. As previously

15  discussed, Plaintiff cannot assert a claim based on a violation Title II of the ADA when the claim

16  arises out of an employment relationship. *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d at

17  1173. To the extent that Plaintiff's second cause of action against individual Defendants is

18  premised on Title V, for violations of Title II, Plaintiff has failed to state a claim based on a

19  cognizable legal theory.

20      In terms of claims brought under Title I of the ADA, the Ninth Circuit has held that they

21  are barred when brought against individual defendants. *Walsh v. Nevada Dep't of Human Res.*, 471

22  F.3d 1033, 1037-38 (9th Cir. 2006). One reason for this is because the remedies available under

23  Title I refer to the same remedies available under Title VII of the Civil Rights Act, and Title VII

24  does not provide for liability against individual defendants. *Walsh v. Nevada Dep't of Human Res.*,

25  471 F.3d at 1037 (noting that in addition to containing the same remedies, the ADA's definition of

26  employer closely tracked that of Title VII, leading the court to conclude both statutes barred suits

27  against individual defendants); *see also Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.

28  1993) (concluding individual defendants have no personal have no liability under ADEA claims

1    because the "liability schemes under Title VII and the ADEA are essentially the same"). Although

2    the Ninth Circuit has not specifically addressed the issue of whether employment-related

3    retaliation claims brought under Title V of the ADA –when premised on a Title I violation – are

4    barred against individual defendants, they have made the broad statement that the ADA does not

5    impose liability on individual employees. *Leon v. Danaher Corp.*, 474 F. App'x 591, 592 (9th Cir.

6    2012) (affirmed dismissal of retaliation and discrimination claims brought under Title VII and the

7    ADA against individual defendants). Because individual Defendants are employees of the OIG,

8    the Ninth Circuit's statement would indicate Plaintiff's claim under the ADA against individual

9    Defendant's is barred. The remedies available under Title V reinforce this conclusion.

10         The remedies section in Title V of the ADA refers to the remedies available under Title I,

11   in Section 12117, when a retaliation claim is based on a Title I violation. 42 U.S.C. § 12203(c)

12   (2012). As such, the remedies available to individuals for employment-related claims under Title

13   V of the ADA are the same remedies that are available under Title I of the ADA. *Walsh v. Nevada*

14   *Dep't of Human Res.*, 471 F.3d at 1037. Because both Title V and Title I refer to the same

15   statutory remedies, and Title I does not support individual liability, it follows that employment

16   related retaliation claims brought under Title V of the ADA are barred against individual

17   defendants. *Stern v. California State Archives,* 982 F. Supp. 690, 693 (E.D. Cal. 1997); *Kennedy v.*

18   *Kings Mosquito Abatement Dist.*, 2013 WL 3968150, at *3-4 (E.D. Cal. July 31, 2013). The ADA

19   provides no remedy for Plaintiff against individual Defendants when Plaintiff's claim is based on

20   a Title V retaliation claim, in the Title I employment context.

21         Accordingly, the Court finds that Plaintiff's second cause of against individual Defendants

22   for violation of Section 12203 is subject to dismissal with prejudice.

23

24   **B. Deprivation of Rights Secured by Section 1983 – Plaintiff's First Cause of Action**

25         Plaintiff's first cause of action seeks recovery against individual Defendants under 42

26   United States Code Section 1983 ("Section 1983") based upon retaliation against Plaintiff when he

27   "exercised his right to speak out against unlawful employment discrimination." Doc. 28, 4:27 –

28   5:1. Plaintiff's FAC also alleges the basis of the Section 1983 claim was a deprivation "of the

1   rights secured to him under" Title V of the ADA. Doc. 17, 26:18-19. Section 1983 provides,

2   "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any

3   State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the

4   United States. . . to the deprivation of any rights, privileges, or immunities secured by the

5   Constitution and laws, shall be liable. . . ." 42 U.S.C. § 12203 (2012).

6          "To state a claim under [Section] 1983, a plaintiff must allege two essential elements: (1)

7   that a right secured by the Constitution or laws of the United States was violated, and (2) that the

8   alleged violation was committed by a person acting under the color of State law." *Long v. County*

9   *of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006). "It is well settled that [S]ection 1983

10  'provides a cause of action for violations of federal statutes as well as the Constitution.'" *Buckley*

11  *v. City of Redding, Cal.,* 66 F.3d 188, 190 (9th Cir. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n,*

12  496 U.S. 498, 508). Section 1983 is a broad statute that provides a "mechanism to enforce" rights

13  secured by the constitution or federal statute. *Buckley v. City of Redding, Cal.,* 66 F.3d at 190.

14  However, there must be an affirmative link between the defendants' actions and the claimed

15  deprivations. *See Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978) (

16  concluding "Congress did not intend [Section] 1983 liability to attach where ... causation [is]

17  absent").

18         Individual Defendants have filed motions to dismiss Plaintiff's first cause of action

19  alleging: 1) it fails to state a claim against a "person" as defined by Section 1983 – individual

20  Defendants are not subject to liability; 2) it is barred by the statute of limitations; and 3) it fails to

21  state a claim based on a right secured by Section 1983. Doc 29, 3-5.

22

23  **1. Liability of State Employees Under Section 1983**

24         In their motion to dismiss Plaintiff's first cause of action, individual Defendants argue that

25  the claim is based entirely on conduct that, even if assumed to be true, would have occurred during

26  the performance of their official duties. They go on to argue that the suit against them is barred

27  because they were acting in their official capacities, and employees of a state agency cannot be

28  sued for monetary damage in their individual capacities when they were acting in their official

1  capacities. Doc. 29, 3:25 -4:8.  This argument turns on two issues: whether an employee is

2  presumed to be acting in his or her *official capacity* when the employee is performing his or her

3  official duties; and whether suits for monetary damages against individual state agency employees

4  are barred when the defendant employee acts in his or her official capacity.

5         The general rule is that the Eleventh Amendment bars suites against the States by "litigants

6  who seek a remedy against a State for alleged deprivations of civil liberties" under Section 1983.

7  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). "A suit against a state official in

8  his or her official capacity is not a suit against the official but rather is a suit against the official's

9  office. As such, it is no different than a suit against the State itself." *Id.* at 71, citing *Brandon v.

10 Holt*, 469 U.S. 464, 471. For this reason, "[n]either a State nor its officials acting in their official

11 capacities are "persons" under [Section] 1983." *Id.* "However, there is one exception to this

12 general rule: [w]hen sued for prospective injunctive relief, a state official in his official capacity is

13 considered a 'person' for [Section] 1983 purposes." *Doe v. Lawrence Livermore Nat. Lab*., 131

14 F.3d 836, 839 (9th Cir. 1997); *Will v. Michigan Dep't of State Police*, 491 U.S. at 71*n.* 10. This

15 exception to Eleventh Amendment immunity is referred to as the "Ex parte Young" doctrine. *Doe

16 v. Lawrence Livermore Nat. Lab*., 131 F.3d at 839. The Ex parte Young doctrine is a narrow

17 exception and only applies "where the relief sought is prospective rather than retrospective." *Doe

18 v. Lawrence Livermore Nat. Lab*., 131 F.3d at 839.

19        Under Plaintiff's first cause of action brought under Section 1983, Plaintiff seeks relief for

20 the following alleged injuries: loss of employment, "mental distress, embarrassment, humiliation,

21 obloquy, loss of reputation, loss of financial security, other similar losses." Doc. 17, 26:22 and

22 27:7-9. Plaintiff requests injunctive relief against all Defendants ordering each of them to reinstate

23 plaintiff's employment retroactively and purge all references to the Notice of Adverse Action from

24 his employment file. Doc. 17, 37:1-9. When an employee seeks reinstatement after a past violation

25 that resulted in a wrongful termination, this is considered prospective injunctive relief which is not

26 barred by the Eleventh Amendment. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007*); Doe v.

27 Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 842 (9th Cir. 1997) (noting that although the

28 reinstatement relates to a past violation, relief would not relate solely to past violations because the

1   employee will benefit from future employment). Likewise, when an employee seeks injunctive

2   relief to expunge past violations from the employee's record, this prevents future harm to the

3   employee and is also considered prospective injunctive relief that is not barred by the Eleventh

4   Amendment. *Flint v. Dennison*, 488 F.3d at 825. Plaintiff's request for injunctive relief to reinstate

5   his employment and expunge his record is not barred by the Eleventh Amendment, even if

6   individual Defendants are sued in their official capacities. Plaintiff also seeks monetary damages

7   for loss of past employment benefits, loss of future employment benefits, and non-economic

8   damages. Doc. 17, 36:8-14. Plaintiff's request for monetary damages is barred because it is not

9   within the narrow exception to Eleventh Amendment immunity when a state official is sued in his

10  or her official capacity.

11        However, while Eleventh Amendment immunity bars suits against state officials when

12  they are sued in their official capacity for monetary damages, it does not bar suits against state

13  officials in their personal capacity. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Ashker v. California*

14  *Dep't of Corrections*, 112 F.3d 392, 394 (9th Cir. 1997); *Pena v. Gardner*, 976 F.2d 469, 472 (9th

15  Cir. 1992). "[O]fficers sued in their personal capacity come to court as individuals. A government

16  official in the role of personal-capacity defendant thus fits comfortably within the statutory term

17  'person.'" *Hafer v. Melo*, 502 U.S. at 27. A judgment against a state official in their personal

18  capacity can only be executed against the official's personal assets. *Kentucky v. Graham*, 473 U.S.

19  159, 166 (1985).

20        Plaintiff's first claim is brought against individual Defendants and not the OIG. However,

21  it is unclear based on the pleading whether Plaintiff brings the claim against individual

22  Defendant's in their official capacities or personal capacities. Doc. 17, 24-27. The Supreme Court

23  explained that the distinction between official capacity and personal capacity "is best understood

24  as a reference to the capacity in which the state officer is sued, not the capacity in which the

25  officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. at 26. The issue does not turn on

26  whether individual Defendant's conduct occurred during their official duties or whether individual

27  Defendants had personal interests that motivated the conduct. The issue turns on whether

28  individual Defendants have been sued in a capacity that would render their personal assets at stake

1 in the event of an adverse judgment.

2       From the pleadings, the Court cannot determine whether Plaintiff brings a Section 1983

3 claim against individual Defendants in their official capacities or their personal capacities.

4 However, in order for Plaintiff's first cause of action to recover for monetary damages, it must

5 necessarily be brought against individual Defendants in their personal capacities.

6

7 **2. Statute of Limitations on Section 1983 Claims**

8       Also in support of their motion to dismiss, individual Defendants argue that Plaintiff's

9 claim is barred by the two-year statute of limitations. Doc. 29, 5:9-16. Section 1983 does not

10 contain a statute of limitations. For this reason, a federal cause of action under Section 1983 is

11 subject to the forum state's "residual or general personal injury statute of limitations." *Owens v.*

12 *Okure* 488 U.S. 235, 236 (1989). The statute of limitations for personal injury claims in California

13 is two years. Cal. Civ. Proc. Code § 335.1 (2003). However, "federal, not state, law determines

14 when a civil rights claim accrues." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). "Under

15 federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is

16 the basis of the action. *Id.*

17       Plaintiff has alleged injuries of lost employment benefits, employment compensation, and

18 mental distress. Doc. 17, 26:23-28 & 27:7. Plaintiff received his first notice of adverse action on

19 March 22, 2013 which indicated his employment would be terminated on May 7, 2013. Doc. 17,

20 22:5-15. Plaintiff's original complaint was filed within the two year statute of limitations on

21 January 6, 2014. The original complaint asserted a cause of action based on Section 1983. Doc 1.

22 "An amendment to a pleading relates back to the date of the original pleading when. . . the

23 amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

24 out—or attempted to be set out—in the original pleading." Fed. Rule Civ. Proc. 15(c). Plaintiff's

25 cause of action based on violation of Section 1983 is not barred by the statute of limitations.

26

27 **3. Plaintiff's Rights Secured by Section 1983**

28       Lastly, in support of their motion to dismiss, individual Defendants argue that Plaintiff's

1   first cause of action, which asserts a claim under Section 1983, fails to identify a right that is

2   protected under Section 1983. Doc 29, 3-5. Plaintiff's first cause of action may be read as alleging

3   a violation of Plaintiff's rights under Section 12203 of the ADA. Alternatively, it may be read as

4   asserting a Constitutional violation of Plaintiff's First Amendment right to free speech. Doc. 17,

5   26:18-19. The issue turns on whether Section 1983 is the appropriate vehicle for a Plaintiff to

6   bring claim that alleges either: violation of statutory rights under Section 12203 of the ADA; or a

7   Constitutional violation of the First Amendment right to free speech.

8

9   **i. Rights Secured by Federal Statute – ADA**

10          When a claim is asserted under Section 1983 for a violation of a statutory right, a Plaintiff

11   cannot recover if "Congress has foreclosed citizen enforcement in the enactment itself, either

12   explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme." *Buckley v.*

13   *City of Redding, Cal.,* 66 F.3d at 190. "A comprehensive remedial scheme for the enforcement of

14   a statutory right creates a presumption that Congress intended to foreclose resort to more general

15   remedial schemes to vindicate that right." *Vinson v. Thomas,* 288 F.3d 1145, 1155 (9th Cir. 2002)

16   (internal quotes removed); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,*

17   453 U.S. 1, 20 (1981)). Claims brought under on Title I of the ADA are subject to a

18   comprehensive remedial scheme that allows private parties to seek relief. *Okwu v. McKim*, 682

19   F.3d at 845; 42 U.S.C. § 12117 (2012). The Ninth Circuit found the remedial scheme under Title I

20   precludes an individual from seeking relief under Section 1983 for violations of Title I of the

21   ADA. *Okwu v. McKim*, 682 F.3d at 846.

22          As previously noted, the remedies available to individuals under Title V of the ADA for

23   employment related claims refer to the remedies available under Title I of the ADA. 42 U.S.C. §

24   12117 (2012). The effect is to entitle a Title V individual claimant to the identical remedies

25   available under Title I. Because the remedial scheme available to individuals under Title V is that

26   same as that available under Title I, and the Title I remedial scheme forecloses Section 1983

27   claims, the Title V remedial scheme precludes an individual from seeking relief under Section

28   1983. To the extent Plaintiff's first cause of action seeks to vindicate Plaintiff's rights under the

1    ADA, the remedial scheme of Title V precludes Plaintiff from using Section 1983 as a vehicle to

2    bring this claim. Such a claim is precluded regardless of the fact that Plaintiff's ADA claim is

3    barred by sovereign immunity. *See Okwu v. McKim*, 682 F.3d at 845 (holding if relief through

4    statutory rights under Section 1983 is precluded, it remains precluded even if the State is entitled

5    to sovereign immunity under the statute).

6           Plaintiff's FAC also refers to violations of Title II. Doc. 17, 26:11. As previously

7    discussed, Plaintiff's ADA claim is based on his prior employment relationship with the OIG, so

8    he cannot assert an employment-related claim against Defendants under Title II of the ADA.

9           Plaintiff's first cause of action cannot assert a claim under Section 1983 against individual

10   Defendants' based on violations of Title I, Title II, or Title V of the ADA.

11

12   **ii. Rights Secured by the Constitution – First Amendment**

13          In Plaintiff's response to the individual Defendant's motion to dismiss, he indicates the

14   intent of the first cause of action was to seek relief under Section 1983 for violations of his

15   Constitutional right to free speech and not to vindicate his rights under the ADA. Doc. 28, 5:12-

16   16.

17          "[A] State cannot condition public employment on a basis that infringes the employee's

18   constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142

19   (1983). The Supreme Court has sought to seek a "balance between the interests of the [employee],

20   as a citizen, in commenting upon matters of public concern and the interest of the State, as an

21   employer, in promoting the efficiency of the public services it performs through its employees."

22   *Id.* (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968)). When a public employee

23   alleges his or her First Amendment rights have been violated by an employer, the Court applies a

24   five-part test to balance the interests of the employee with the interests of the State, including a

25   determination of: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the

26   plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech

27   was a substantial or motivating factor in the adverse employment action; (4) whether the state had

28   an adequate justification for treating the employee differently from other members of the general

public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). The plaintiff has the burden of persuasion in the first three parts: speech relating to matter of public concern, speaking as a private citizen, and speech being a substantial or motivating factor in the adverse action. *Id.* at 1070 – 71. If Plaintiff's Section 1983 claim is based on infringement of his Constitutional right to freedom of speech, Plaintiff's FAC must allege facts sufficient to satisfy these three tests.

**(a) Matter of Public Concern**

    "Speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004) (internal quotes removed).  This is referred to as speech on a matter of public concern. "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. at 147–48). The content of the speech is the "greatest single factor" when determining whether an employee's speech is a matter of public concern. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d at 925.

    Plaintiff complaint alleges four different occasions when Plaintiff engaged in speech that opposed practices at the OIG: 1) Plaintiff voiced opposition to Gordon based on her inquiry into the details of Plaintiff's TB Test; 2) Plaintiff informed Wesley that he opposed any sharing of his mental or medical records with other employees at the OIG; 3) Plaintiff filed a formal complaint with the EEOC opposing Barton's disclosure of Plaintiff's perceived mental and physical disability to other employees; 4) Plaintiff demanded Barton secure Plaintiff's confidential personnel medical records that were available for other OIG employees to view. Doc. 17, 7-18.

    In all four instances, Plaintiff's speech focuses on his particular medical records and his concerns that his medical information was being improperly disclosed. Speech is considered to "involve a matter of public concern when it can be fairly considered to relate to 'any matter of

political, social, or other concern to the community.'" *Johnson v. Multnomah County, Or.*, 48 F.3d at 422 (quoting *Connick v. Myers*, 461 U.S. at 142). For instance, the Ninth Circuit has found that when the content of employee speech relates to serious government misconduct, this is a situation that concerns the community and rises to the level of a public concern. *See Ceballos v. Garcetti*, 361 F.3d 1168, 1174 (9th Cir. 2004) (overruled on other grounds) (holding that falsification of information in a search warrant affidavit was a matter of public concern); *Chateaubriand v. Gaspard,* 97 F.3d 1218, 1222–23 (9th Cir.1996) (concluding that an employee's complaints of illegal campaign activity was of public concern); *Roth v. Veteran's Admin.,* 856 F.2d 1401, 1406 (9th Cir. 1988) (ruling that an employee's reports of safety regulation violations, unethical conduct, misuse of public funds and mismanagement constituted speech of public concern). These examples all relate to issues that would be relevant to the public's overall evaluation of the government agency's duties and go beyond individual grievances. By contrast, the content of Plaintiff's speech focuses on his own particular situation. Plaintiff does not allege the medical information of other OIG employees was improperly shared, instead, his concerns only related to his medical information. This, on its own, does not indicate there is serious misconduct on the part of the OIG and would likely not be relevant to the public when evaluating the overall performance of the OIG. Plaintiff's speech is therefore unlike the speech the Ninth Circuit has previous found qualifies as speech on a public concern. On the other end of the spectrum, there is speech that concerns a matter of personal interest, which is generally not deemed to be speech on a public concern. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d at 924. "[S]peech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of government agencies, is generally not of public concern." *Id.* (internal quotes removed). Because the content of Plaintiff's speech focuses only on his particular situation, this tends to indicate his speech relates to a personal grievance and is not a matter of public concern.

The form and context of Plaintiff's speech also indicate Plaintiff was not speaking on a matter of public concern. The form of Plaintiff's speech was private in nature. Plaintiff restricted his communication to other employees within the OIG and to the caseworkers at the EEOC, as

opposed to announcing the improper practices publicly. Although not dispositive, when speech is directed at "a limited audience," this "weighs against a claim of protected speech." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 714 (9th Cir. 2009) (quoting *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997)). When evaluating the context of an employee's speech, the relevant inquiry is "why did the employee speak (as best as we can tell)?" *Desrochers v. City of San Bernardino*, 572 F.3d at 715. Plaintiff's primary motivation appears to be his concern that his medical information was being improperly disclosed, and the improper disclosure was resulting in other employees at the OIG treating Plaintiff differently. These motivations relate to personal interests that Plaintiff had in maintaining his privacy and employment situation, which are not matters of public concern.

Plaintiff's FAC fails to allege facts sufficient to indicate Plaintiff's speech addressed a matter of public concern.

**(b) Speaking as a Private Citizen**

For speech to be protected by the First Amendment, Plaintiff must have engaged in the speech as a private citizen and not as a public employee. *Eng v. Cooley*, 552 F.3d at 1071. "Statements are made in the speaker's capacity as [a private] citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Id.* (quoting *Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d 1121, 1126–27 (9th Cir.2008)). On the other hand, "when public employees make statements pursuant to their official duties, the employees are not speaking as [private] citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  A "fact-intensive" inquiry is required to determine whether an employee's speech was pursuant to his or her official duties. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074 (9th Cir. 2013). The Ninth Circuit has indicated the court should focus on three particularly useful areas when conducting this inquiry: 1) "whether or not the employee confined his communications to his chain of command," 2) whether the subject matter of the communication is "a routine report, pursuant to normal

departmental procedure" or whether "it is unlikely that such complaints can reasonably be classified as being within the job duties of an average employee," and 3) whether the "employee speaks in direct contravention to his superior's orders." *Id.* at 1074-75. "[W]hen there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment on whether the plaintiff's speech was pursuant to his official duties until after the fact-finding process." *Id.* at 1072 (quoting *Posey v. Lake Pend Oreille School District No. 84*, 546 F.3d 1121, 1123 (9th Cir. 2008).

In *Dahlia*, Angelo Dahlia, a detective for the Burbank Police Department ("BPD"), reported to the scene of an armed robbery on December 28, 2007. *Dahlia v. Rodriguez*, 735 F.3d. at 1063. The investigation was being supervised by Lieutenant Jon Murphy. The day after the robbery, Dahlia saw Lieutenant Omar Rodriquez question a suspect by grabbing him by the throat and pointing the barrel of his pistol in the suspect's face. Dahlia also heard a suspect being hit and yelling from inside one of the police interrogation rooms. After that, Dahlia was excluded from further suspect interviews, and high-ranking officers in the BPD took over the investigation. The abuse of suspects during interviews continued and Dahlia informed Murphy of the events. Murphy told Dahlia to "stop his sniveling." *Id.* at 1064. Dahlia continued to complain to Murphy about the violations, but the beatings allegedly persisted. Eventually, Internal Affairs ("IA") began an investigation and met with Dahlia on three separate occasions. After each meeting, Rodriguez threatened Dahlia and attempted to intimidate him into not mentioning the police misconduct. Dahlia reported Rodriquez's conduct to the Burbank Police Officers' Association ("BPOA") President and Los Angeles Sheriff Department ("LASD") investigators. *Id.* at 1065. Dahlia was placed on administrative leave, pending dismissal. He then filed a Section 1983 claim alleging violation of his First Amendment rights. Several employees of the BPD were named as defendants, including Murphy and Rodriquez. The employees filed a motion to dismiss pursuant to Rule 12(b)(6). *Id.* at 1066. The district court granted the motion noting, in part, that Dahlia "spoke pursuant to his official duties and that was not constitutionally protected." Dahlia appealed and the Ninth Circuit reversed. *Id.* at 1080. The court found there were facts sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6), and that a decision on the ultimate issue of whether

1    Dahlia spoke as a private citizen should be reserved by the court until after discovery. *Id.* at 1078.

2         In order to evaluate whether Plaintiff spoke pursuant to his official duties, and therefore as

3    a public employee, we turn to the three guiding principles set forth by the court in *Dahlia*. The

4    first area of inquiry is whether Plaintiff "confined his communications to his chain of command."

5    *Dahlia v. Rodriguez*, 735 F.3d. at 1074. Although the complaint does not detail the reporting

6    structure of the OIG, beyond indicating Gordon was Plaintiff's direct supervisor, the complaint

7    does allege that Plaintiff filed a formal complaint with the EEOC. This would represent a break in

8    the chain of command by reporting to an agency outside of Plaintiff's agency of employment,

9    which is similar to *Dahlia* when Dahlia reported the alleged misconduct to the LASD and the

10   BPOA President. The Ninth Circuit placed particular emphasis on this first inquiry during its

11   analysis in *Dahlia*, and held that in "highly hierarchical employment settings," a relevant factor as

12   to whether a person spoke as a private citizen is whether or not the employee "confined his

13   communications to his chain of command." *Id.* at 1074. The FAC alleges Wesley told Plaintiff

14   that he should present requests through the proscribed channels and that OIG policies made it an

15   act of insubordination for Plaintiff to voice grievances directly to Barton. Doc. 17, 11:12-28.

16   Wesley's comment, and the alleged OIG policies, are a strong indication that the OIG fostered a

17   highly hierarchical environment, much like the environment at the BPD. Furthermore, it also tends

18   to indicate that Wesley considered it a break in the chain of command when Plaintiff voiced his

19   grievances to anyone other than Gordon. Overall, the FAC alleges facts sufficient to indicate that

20   Plaintiff did not confine his communication to the chain of command.

21        The second inquiry focuses on the content of the communication and whether the subject

22   matter of the communication is "a routine report, pursuant to normal departmental procedure."

23   *Dahlia v. Rodriguez*, 735 F.3d. at 1075. All of Plaintiff's communications revolved around what

24   Plaintiff perceived to be the improper disclosure of his medical information. Plaintiff was

25   employed as a Special Assistant Inspector General. Doc. 17, 3:20. There is no indication in the

26   FAC, and individual Defendants do not allege, that Plaintiff's official duties included reporting

27   perceived improper disclosure of employee medical information. Based on the content of the

28   communications, it does not appear they were part of Plaintiff's official duties and this was routine

1   reporting on his part. Lastly, the third inquiry focuses on whether the "employee speaks in direct

2   contravention to his superior's orders." *Dahlia v. Rodriguez*, 735 F.3d. at 1075. The FAC alleges

3   Wesley told Plaintiff that he should present requests through the proscribed channels, regardless of

4   the effectiveness of the OIG response. Doc. 17, 12:1-4. This conversation occurred around the

5   March 2012 timeframe. Doc. 17, 9:22-23. However, Plaintiff appears to have continued to voice

6   concerns outside of the proscribed channels by informing Barton in September of 2012 that

7   Plaintiff's personnel file was not adequately secured. Doc. 17, 17:17-23.

8          Plaintiff's FAC alleges facts sufficient to indicate Plaintiff's spoke as a private citizen.

9

10  **(c) Substantial or Motivation Factor in the Adverse Action**

11         If a plaintiff meets the burden of showing he or she spoke on a matter of public concern as

12  a private citizen, the third step of the test requires the Court to determine "whether the plaintiff's

13  protected speech was a substantial or motivating factor in the adverse employment action." *Eng v.*

14  *Cooley*, 552 F.3d at 1070. Within the context of the First Amendment, an adverse employment

15  action is one that is "reasonably likely to deter employees from engaging in a protected activity."

16  *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003). Termination of employment

17  qualifies as an adverse action. *Id.* at 977. Plaintiff has alleged sufficient facts to demonstrate he

18  suffered an adverse action – his loss of employment – which was first communicated to Plaintiff

19  on March 22, 2013. Doc. 17, 22:5-15.

20         In evaluating whether Plaintiff's speech was a substantial or motivating factor in the

21  adverse action, an objective consideration is the period of time that elapses between the speech

22  and the adverse action. *Coszalter v. City of Salem*, 320 F.3d at 977. In addition to this, a subjective

23  consideration is whether "retaliatory animus [w]as the cause of injury." *Lacey v. Maricopa*

24  *County*, 693 F.3d 896, 916–17 (9th Cir.2012).

25         Around March 2012, Plaintiff voiced his opposition to Gordon's inquiry into the details of

26  his TB Test, informed Wesley that he opposed any sharing of his mental or medical records, and

27  filed his formal complaint with the EEOC. In September of 2012, Plaintiff demanded Barton

28  secure Plaintiff's confidential personnel medical records around. Plaintiff engaged in this speech

approximately 12 months and six months prior to the adverse action. The time elapsed between the speech and the adverse action may be considered to be within a close enough timeframe to indicate the speech was a motivating factor in Plaintiff's termination. *See Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002). (ruling that an action taken 11 months after the protected speech may still provide an inference of retaliatory conduct, although a closer temporal proximity would have provided a stronger inference). Plaintiff has also alleged the individual Defendants were subjectively motivated by their personal political interests to retaliate against Plaintiff. Doc. 17, 24:21-25. Specifically, he alleges Barton, Wesley and Spurling acted "to avoid being accused of allowing unlawful discrimination practices", and Gordon acted to conceal unlawful discrimination. Viewing the alleged facts "in the light most favorable to the non-moving party", Plaintiff has alleges facts sufficient to indicate his speech was a substantial or motivating factor in the adverse action.

However, Plaintiff has failed to allege facts sufficient to indicate he spoke on a matter of public concern. As such, Plaintiff has failed to sufficiently state a claim for relief under Section 1983 for violations of his Constitutional right of free speech. Accordingly, the Court finds that Plaintiff's first cause of against individual Defendants is dismissed with leave to amend.


**C. Fifth Cause of Action – FEHA Section 12940(j)**

Plaintiff's fifth cause of action against Defendants alleges a violation of California Government Code section 12940(j) ("Section 12940(j)") due to Defendants' harassment of Plaintiff based on his having a perceived physical or mental disability. Doc. 17, 33:1-10. Defendants Wesley, Spurling, and Gordon have filed separate motions to dismiss Plaintiff's fifth cause of action, each arguing that Plaintiff has insufficiently pled the claim.

Section 12940(j) is part of the California Fair Employment and Housing Act ("FEHA"). Cal. Gov. Code § 12900 (2015). The statute renders it an unlawful employment practice "[f]or an employer. . . or any other person, *because of.* . . physical disability [or] mental disability. . . to harass an employee. . . ." Cal. Gov. Code § 12940(j) (2015) (emphasis added). The California Legislature declared their intent was for the statute to also cover situations where "an individual is

erroneously or mistakenly believed to have any physical or mental condition." Cal. Gov. Code § 12926.1(d) (2015).  Therefore, harassment because of a perceived physical or mental disability may constitute a violation of Section 12940(j).

When evaluating Title VII harassment claims, the Supreme Court has recognized that "not all workplace conduct that may be described as 'harassment'" is actionable. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). FEHA is California's counterpart to the federal Title VII Civil Rights Act. *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 129-30, 980 P.2d 846 (Cal 1999). As such, California courts have applied Title VII standards when evaluating FEHA claims to determine if alleged conduct may be deemed actionable harassment. *Id* at 130; *Beyda v. City of Los Angeles* 65 Cal.App.4th 511, 517, 76 Cal.Rptr.2d 547 (Cal. Ct. App. 1998). For conduct to be actionable as harassment, "it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. at 67; *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th at 130.

Whether the alleged conduct creates an abusive working environment is critical in determining whether conduct is actionable as harassment. "The working environment must both subjectively and objectively be perceived as abusive." *Brooks v. City of San Mateo*, 229 F.3d 917, 923-24 (9th Cir. 2000) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995)). The Ninth Circuit "use[s] a totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim" of an abusive work environment. *Brooks v. City of San Mateo*, 229 F.3d at 924. Factors used in the totality of the circumstances test include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Brooks v. City of San Mateo*, 229 F.3d at 924 (highlighting "frequency, severity and level of interference with work performance" as particularly important factors in the inquiry). The California Supreme Court found the legislative intent behind the FEHA was to restrict the definition of harassment to "conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, *because of meanness or bigotry*, or for other personal motives. *Reno v.*

1  *Baird*, 18 Cal. 4th 640, 645-46, 957 P.2d 1333 (Cal. 1998) (emphasis added).

2  Under Section 12940(j), "[a]n employee of an entity. . . is personally liable for any

3  harassment prohibited by this section that is perpetrated by the employee. . . ." Cal. Gov. Code §

4  12940(j) (2015). Because each employee is only liable for his or her own acts, the merits of each

5  motion to dismiss must be evaluated separately.

6

7  **1. Conduct of Defendant Gordon**

8  Plaintiff's FAC alleges a series of actions by Gordon, including: inquiring into the details

9  of Plaintiff's TB test, scrutinizing Plaintiff's time records, admonishing Plaintiff for foul and

10  inappropriate language, downgrading Plaintiff's performance evaluation, denying Plaintiff's

11  request for use of a private car, denying Plaintiff's request to attend a meeting by phone, and

12  denying Plaintiff's request to travel to a job site.  Doc. 17, 7:27-8:2; 12:24-28; 14:8-10; 16:27-28;

13  20:4-10; 20:19-28;16:10-18. Plaintiff's complaint alleges that defendant Gordon's conduct created

14  a hostile work environment that included attempts to adopt and enforce new employment policies.

15  Doc. 17, 16:11-16.

16  When an employee alleges a supervisor engaged conduct that qualifies as harassment, the

17  conduct must be of a type that is not necessary "to carry out the legitimate objectives of personnel

18  management." *Reno v. Baird*, 18 Cal. 4th at 646; *Janken v. GM Hughes Electronics*, 46 Cal. App.

19  4th 55, 63, 53 Cal. Rptr. 2d 741 (Cal. Ct. App. 1996). Gordon was Plaintiff's direct supervisor.

20  Doc. 14, 4:13-15. Plaintiff's allegations that Gordon admonished and downgraded Plaintiff's

21  performance evaluation for using foul language fails to demonstrate anything more than conduct

22  on the part of Gordon that was a necessary part of personnel management. *See McKenna v.*

23  *Permanente Medical Group*, 894 F.Supp.2d 1258, 1281 (E.D. Cal. 2012) (holding three

24  reprimands of an employee during a one year period was not enough to state a claim of harassment

25  under FEHA, especially when the complaint raised inferences that the employee contributed to the

26  circumstances of the reprimand). Similarly, monitoring when an employee appears for works and

27  how that employee occupies his or her time at work is a routine part of personnel management.

28  *See Valente-Hook v. Eastern Plumas Health Care*, 368 F.Supp.2d 1084, 1103 (E.D. Cal. 2005)

1   (finding that plaintiff's allegation that an employer who compelled the employee to return to work,

2   or risk being fired, fell short of stating a claim of harassment). By reviewing and scrutinizing

3   Plaintiff's time records, Gordon was engaging in personnel management duties which are typical

4   of a supervisor. Gordon's conduct as a supervisor is clearly not the type of conduct that is within

5   the scope of Section 12940(j).

6        Plaintiff's allegation that Gordon inappropriately inquired into the details of Plaintiff's TB

7   Test also appears to be conduct outside the scope of Section 12940(j). Plaintiff acknowledges that

8   as Plaintiff's supervisor, Gordon was authorized to inquire into whether Plaintiff was current with

9   testing and whether the test results were negative. Doc. 17, 8:4-6. The inference is that this type of

10  inquiry is part of Gordon's personnel management duties. Plaintiff's complaint does not include

11  facts that indicate how and why the inquiry was inappropriate. Assuming, arguendo, the inquiry

12  was inappropriate, it would still need to have resulted in an abusive work environment for it to be

13  considered actionable harassment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. at 67; *Brooks v.*

14  *City of San Mateo*, 229 F.3d at 923-24. An abusive work environment includes conduct on the part

15  of an employer that "would have seriously affected the psychological well-being of a reasonable

16  employee." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 609-10, 262 Cal. Rptr.

17  842 (Cal. Ct. App. 1989). In *Fisher*, the court found that even if an employee's conduct may be

18  considered egregious, if it is too isolated in frequency it will not be enough to subject the

19  employee plaintiff to an abusive work environment. *Id.* at 614. Gordon's single inquiry into

20  Plaintiff's TB test results, without more, is too isolated of an act to seriously affect the

21  psychological well-being of a reasonable employee. This conduct does create an abusive work

22  environment and does not constitute harassment under Section 12940(j).

23       Lastly, Plaintiff alleges Gordon created a hostile work environment that included attempts

24  to adopt and enforce new employment policies, and that Gordon denied Plaintiff's request for use

25  of a private car, his request to attend a meeting by phone, and his request to travel to a job site.

26  Plaintiff's complaint fails to allege Gordon's conduct was motived "because of" Plaintiff's

27  perceived "physical disability [or] mental disability." Cal. Gov. Code § 12940(j) (2015). As such,

28  it fails to satisfy the statutory requirement of FEHA. Even setting this aside, nothing in the

allegation indicates Gordon's denials or new employment policies were motivated by meanness or bigotry, which would be strong indicators that the conduct is actionable harassment. To the contrary, the conduct does not appear to be outside the scope of a supervisor's necessary job performance duties. Conduct within the scope of necessary job performance is not actionable harassment under FEHA. *See Reno v. Baird*, 18 Cal. 4th at 645. Although the complaint alleges denials of Plaintiff's ability to attend a meeting by phone and travel to a job site did interferes with Plaintiff's work performance, the allegations ultimately fall short of satisfying the Ninth Circuit totality of the circumstances test. Nothing in the complaint indicates the denials "*unreasonably* interfere[d] with" Plaintiff's work performance. *Brooks v. City of San Mateo*, 229 F.3d at 924. For this reason, Gordon's denials do not constitute harassment under the FEHA.

Accordingly, the Court finds that Plaintiff's fifth cause of against defendant Gordon for violation of Section 12940(j) is dismissed with leave to amend.

**2. Conduct of Defendant Spurling**

Plaintiff's FAC alleges that individual Defendants, including Spurling, created a hostile work environment that included repeated negative comments and attempts to adopt and enforce new employment policies that made it difficult for Plaintiff to perform his employment duties. Doc. 17, 16:11-16. There are no specific factual allegations in Plaintiff's complaint beyond this general statement. A vague and conclusory statement, such as this, is insufficient to demonstrate conduct that is "severe or pervasive" which in turn "create[s] an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. at 67.

Accordingly, the Court finds that Plaintiff's fifth cause of against defendant Spurling for violation of Section 12940(j) is dismissed with leave to amend.

**3. Conduct of Defendant Wesley**

Plaintiff's FAC alleges Wesley instructed Gordon to scrutinize Plaintiff's time records, Wesley criticized Plaintiff's time records and Plaintiff's performance of his duties, and Wesley responded to Plaintiff's concerns – regarding the OIG sharing Plaintiff's confidential medical

1   information – in a hostile and threatening tone.  Doc. 17, 12:9-15, 11:25-28.

2   　　　Plaintiff's first allegation, that Wesley instructed Gordon to scrutinize Plaintiff's

3   timekeeping activities and criticized Plaintiff's time records, fails to allege facts sufficient to

4   establish harassment. Doc. 17, 12:9-15. When an employee alleges that a manager engages in

5   micromanagement and excessive criticisms of the employee's work, this alone is not enough to

6   demonstrate a pattern of harassment. This conduct appears to nothing more than personnel

7   management, which like in the case with Gordon, is conduct that is outside the scope of Section

8   12940(j). However, even if the conduct was considered to be unnecessary "to carry out the

9   legitimate objectives of personnel management," Plaintiff's allegation would still fail to establish a

10  claim under Section 12940(j).

11  　　　A critical element under Section 129490(j) is that the defendant engaged in harassing

12  conduct because of the plaintiff's perceived mental or physical disability. *Reno v. Baird*, 18 Cal.

13  4th at 646; *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th at 63; Cal. Gov. Code § 12940(j)

14  (2015). This critical element can be established by facts that raise an inference that the defendant

15  acted out of meanness or bigotry. *Reno v. Baird*, 18 Cal. 4th 640, 646. When other courts in the

16  Ninth Circuit have been faced with similar facts, the courts have concluded that without showing

17  that a defendant's conduct was motivated by animus or hostility due to Plaintiff's protected

18  characteristic, a claim under Section 12940(j) must fail. *See e.g. Connolly v. Remkes*, 2014 WL

19  5473144, at *12 (N.D. Cal. Oct. 28, 2014) (dismissing a claim under Section 12940(j) when

20  plaintiff failed to allege facts sufficient to raise an inference that defendant's conduct was done

21  because of plaintiff's health or other protected characteristic). Plaintiff's FAC does not allege facts

22  sufficient to indicate that Wesley scrutinized Plaintiff's timekeeping activities because of

23  Plaintiff's perceived mental or physical disability, nor does the content of Wesley's criticisms

24  indicate he that acted out of meanness or bigotry. The manner in which a defendant communicates

25  to an employee is also an important consideration.  *Landucci v. State Farm Insurance Company*,

26  2014 WL 3962845, at *7 (N.D. Cal. Aug. 12, 2014) (finding it plausible that conduct was done out

27  of animus towards plaintiff's medical conditions, based on allegations that defendant's comments

28  were given in an unnecessarily demeaning manner). However, Plaintiff has not alleged that the

1    manner in which Wesley's comments were communicated was unnecessarily demeaning. As such,

2    Plaintiff has failed to allege sufficient facts to raise an inference that Wesley's criticism of

3    Plaintiff's work was motivated by animus or hostility towards Plaintiff's perceived medical or

4    mental condition.

5           Plaintiff second allegation that Wesley responded to Plaintiff in a hostile and threatening

6    tone also fails to state a claim upon which relief may be granted. As with the previous allegation,

7    there is no indication from Plaintiff's complaint that Wesley's response was caused by animus

8    towards plaintiff's perceived medical or mental condition. Further, nothing in the complaint

9    indicates that Wesley's one-time response to Plaintiff was "physically threatening or humiliating"

10   to the Plaintiff, or that it "*unreasonably* interfere[d] with" Plaintiff's work performance. *Brooks v.*

11   *City of San Mateo*, 229 F.3d at 924. Plaintiff's complaint also alleges that individual Defendants,

12   including Wesley, created a hostile work environment that included attempts to adopt and enforce

13   new employment policies. Doc. 17, 16:11-16. For the reasons stated above, this conclusory

14   statement is insufficient to state a claim under Section 12940(j).

15          Accordingly, the Court finds that Plaintiff's fifth cause of against defendant Wesley for

16   violation of Section 12940(j) is dismissed with leave to amend.

17

18   **D. Sixth Cause of Action – CA Gov. Code 12948 and Unruh Act**

19          Plaintiff's sixth cause of action seeks recovery against Defendants based on an alleged

20   violation California Government Code section 12948 (Section 12948). Doc. 17, 35:1-5. Section

21   12948, part of the FEHA, make is an unlawful practice "for a person to deny or to aid, incite, or

22   conspire in the denial of the rights created by Section 51, 51.5, 51.7, 54, 54.1, or 54.2 of the Civil

23   Code." Cal. Gov. Code § 12948 (2015). Plaintiff's complaint further alleges the denial of rights

24   was based on Section 51 of the Civil Code, specifically subdivision (f). Doc. 17, 34:24;-28, 14:17-

25   22.

26          Section 51 of the Civil Code is known as the Unruh Civil Rights Act ("Unruh Act"). Cal.

27   Civ. Code § 51 (2012). The Unruh Act provides, "All persons within the jurisdiction of this state

28   are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin,

1    disability, medical condition, genetic information, marital status, or sexual orientation are entitled

2    to the full and equal accommodations, advantages, facilities, privileges, or services in all business

3    establishments of every kind whatsoever…." Cal. Civ. Code § 51(a) (2012). "[And a] violation of

4    the right of any individual under the federal Americans with Disabilities Act of 1990 shall also

5    constitute a violation of this section." Cal. Civ. Code § 51(f) (2012).

6          Defendants argue Plaintiff's sixth cause of action should be dismissed because the scope of

7    the Unruh Act does not include claims that arise out of an employment relationship. *See e.g.* Doc.

8    22, 8:7-9. Plaintiff contends the Unruh Act does apply to employment claims that arise as a result

9    of a violation of the ADA, and a violation of Section 12948 is the proper vehicle to bring these

10   claims. Doc. 28, 14:17-22; 28, 14:6-11. The motion to dismiss raises two issues: 1) whether the

11   Unruh Act incorporates the ADA in its entirety, including the employment-related provisions; and

12   2) whether Section 12948 of the FEHA is the proper vehicle to bring a claim that vindicates

13   employment rights.

14

15   **1. Scope of the Unruh Act**

16         The Ninth Circuit has found that "California courts have, historically, rejected attempts by

17   plaintiffs to expand the scope of the Unruh Act to include employment claims." *Bass v. Cnty. of*

18   *Butte*, 458 F.3d 978, 981 (9th Cir. 2006). The finding was based on two famous California

19   Supreme Court decisions, first in 1970, and then reaffirmed in 1990. *See Bass v. Cnty. of Butte*,

20   458 F.3d at 981, citing *Rojo v. Kliger,* 52 Cal.3d 65, 276 Cal.Rptr. 130 (Cal. 1990) and *Alcorn v.*

21   *Anbro Engineering, Inc*., 2 Cal.3d 493, 86 Cal.Rptr. 88 (Cal. 1970). In 1992, after these decisions,

22   the Unruh Act was amended to include subdivision (f) which incorporated the rights Congress

23   created under the newly passed ADA. *Bass v. Cnty. of Butte*, 458 F.3d at 981. This raised the

24   question of whether the amendment to the Unruh Act incorporated the ADA in its entirety, or

25   whether it only incorporated limited portions of the ADA. After reviewing the California

26   legislative history in great detail, the Ninth Circuit concluded that the legislative intent was for the

27   Unruh Act to *not* incorporate the provisions of Title I of the ADA. *Id.* at 982. Therefore, the Unruh

28   Act did not apply to employment claim under the ADA. *Id*. Other Ninth Circuit opinions have also

1    confirmed the Unruh Act does not apply to claims that arise out of an employment relationship.

2    *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (holding that the

3    plaintiff had failed to plead facts sufficient to invoke the protections of the Unruh Act where his

4    claims stemmed from his employment relationship with the defendant); *Strother v. S. Cal.*

5    *Permanente Med. Group*, 79 F.3d 859, 874–75 (9th Cir. 1996) (affirming summary judgment

6    where the plaintiff's claim of race discrimination arose out of an employment relationship with the

7    defendant).

8           Plaintiff's claim under the ADA arises out of alleged violations based on Title I, see

9    discussion under Plaintiff's second cause of action. To the extent that Plaintiff's sixth cause of

10   action states a claim for relief under the Unruh Act, this fails a matter of law.

11

12   **2. Employment Claims Under Section 12948**

13          Plaintiff argues that while an employment-related claim based on discrimination may fail if

14   brought under the Unruh Act, the FEHA – specifically Section 12948 – provides the appropriate

15   vehicle to raise a claim to "vindicate employment rights that could not be addressed by the Unruh

16   Act." Doc. 24, 14:10-11.

17          While it appears settled that the Unruh Act is not the appropriate vehicle to bring an

18   employment-related discrimination claim, the Ninth Circuit has not directly addressed whether

19   Section 12948 may be used to bring a discrimination claim that arises out of an employment

20   relationship. Turning to District Court decisions, it is clear the trend is for courts to reject a claim

21   under Section 12948 when the claim is based on alleged discrimination that arises out of an

22   employment relationship. *See Scott v. Solano Cnty. Health & Soc. Servs. Dep't*, 2008 WL

23   3835267, at *21 (E.D. Cal. Aug. 15, 2008) (dismissing a cause of action under Section 12948

24   based on alleged racial discrimination based on the finding that the "Unruh Civil Rights Act. . .

25   does not encompass allegations of employment discrimination"); *Lewis v. Pac. Mar. Ass'n*, 2007

26   WL 2429554, at *10 (N.D. Cal. Aug. 24, 2007) (dismissing an employee's cause of action under

27   Section 12948, noting the Unruh Act does not apply to discrimination in employment); *Jurado v.*

28   *Eleven-Fifty Corp.*, 630 F. Supp. 569, 573 (C.D. Cal. 1985), aff'd, 813 F.2d 1406 (9th Cir. 1987)

1   (dismissing plaintiff's causes of action based on violations of Section 51 and Section 12948 for

2   violation of his civil rights based on race and national origin discrimination, finding these statutes

3   were inapplicable to plaintiff's employment situation). By contrast, when courts have allowed an

4   employment discrimination claim to proceed under Section 12948, the court was not asked to

5   address the issue of whether the scope of Section 12948 allowed for such a claim. In these cases,

6   the only issue disputed by the parties was whether Section 12948 of the FEHA allowed for claims

7   to be brought against individual employees. *Compare Scott v. Solano Cnty. Health & Soc. Servs.*

8   *Dep't,* 459 F. Supp. 2d 959, 970 (E.D. Cal. 2006) (allowing a claim under Section 12948 against

9   individual employees) *with Selandia v. Regents of Univ. of Cal.*, 2006 WL 463127, at *5 (E.D.

10  Cal. Feb. 24, 2006) (finding that Section 12948 only prohibited discrimination by employers).

11  These opinions do not address the legal question raised in this case and are of limited value in this

12  circumstance.

13      This Court finds the prior decisions that directly addressed the scope of Section 12948

14  persuasive. Given there are no clear decisions that indicate an employment discrimination claim

15  may proceed under Section 12948, when premised on a violation of Title I of the ADA, Plaintiff's

16  cause of action under Section 12948 cannot proceed to the extent that it is an employment-related

17  discrimination claim premised on rights incorporated through the Unruh Act.

18      Accordingly, the Court finds that Plaintiff's sixth cause of against Defendant's for

19  violation of Section 12948 based on Section 51(f) is without merit and is therefore subject to

20  dismissal with prejudice.

21

22              **V. CONCLUSION AND ORDER**

23  Accordingly, IT IS HEREBY ORDERED that:

24      1.  Individual Defendant's motion to dismiss the first cause of action for failure to state a

25          claim upon which relief can be granted pursuant to 42 U.S.C. Section 1983 is

26          GRANTED, dismissed with leave to amend;

27

28

35

2. The OIG's motion to dismiss the second cause of action for failure to state a claim upon which relief can be granted pursuant to the Americans with Disabilities Act is GRANTED, dismissed with prejudice;

3. Individual Defendant's motion to dismiss the second cause of action for failure to state a claim upon which relief can be granted pursuant to the Americans with Disabilities Act is GRANTED, dismissed with prejudice;

4. Gordon's motion to dismiss the fifth cause of action for failure to state a claim upon which relief can be granted pursuant to California Government Code Section 12940(j) is GRANTED, dismissed with leave to amend;

5. Spurling's motion to dismiss the fifth cause of action for failure to state a claim upon which relief can be granted pursuant to California Government Code Section 12940(j) is GRANTED, dismissed with leave to amend;

6. Wesley's motion to dismiss the fifth cause of action for failure to state a claim upon which relief can be granted pursuant to California Government Code Section 12940(j) is GRANTED, dismissed with leave to amend; and

7. Defendants' motion to dismiss the sixth cause of action for failure to state a claim upon which relief can be granted pursuant to California Government Code Section 12948 is GRANTED, dismissed with prejudice.

IT IS SO ORDERED.

Dated:   May 21, 2015

_____

SENIOR  DISTRICT  JUDGE