1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                          **EASTERN DISTRICT OF CALIFORNIA**

8

9   **MICHAEL G. ALLFORD,**                    **CASE NO. 1:14-CV-00024-AWI-JLT**

10              **Plaintiff**                   **ORDER REGARDING DEFENDANTS'**
                                               **MOTIONS TO DISMISS THE SECOND**
11          **v.**                              **AMENDED COMPLAINT**

12  **ROBERT BARTON, INDIVIDUALLY**
    **AND IN THE CAPACITY OF**
13  **INSPECTOR GENERAL; THE**
    **CALIFORNIA OFFICE OF INSPECTOR**
14  **GENERAL, AN INDEPENDENT**
    **DEPARTMENT OF THE STATE OF**
15  **CALIFORNIA; ROY WESLEY; JAMES**          (Docs. 37, 39, 40, 41, 42, and 43)
    **SPURLING; AND MAY GORDON,**
16
              **Defendants**
17

18                              **I. INTRODUCTION**

19          This is an action for damages and injunctive relief by plaintiff Michael Allford against

20  defendant California Office of the Inspector General ("OIG"), and individuals Robert Barton

21  ("Barton"), Roy Wesley ("Wesley"), James Spurling ("Spurling"), and May Gordon ("Gordon")

22  (the "individual Defendants") (collectively, "Defendants"). Doc. 35. Allford was employed by

23  the OIG as a Special Assistant Inspector General. Id. at 3:18-20. Allford's Second Amended

24  Complaint ("SAC") alleges he was terminated from employment by the OIG in violation of his

25  constitutional rights under the First Amendment and the employment discrimination, retaliation,

26  and harassment provisions of the California Fair Employment and Housing Act ("FEHA"). Id.

27  Defendants filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule

28  12(b)(1)") and Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Docs. 37, 39, 40, 41,

42, 43.  The matter was taken under submission without oral argument.

For the reasons that follow, individual Defendant's motion to dismiss the first cause of action (Doc. 37) is granted, the OIG's motion to dismiss the second, third, and fourth causes of action (Doc. 43) for lack of subject matter jurisdiction is granted, the Court declines to exercise pendent jurisdiction over the remaining state law claims and thus dismisses the third and fourth causes of action against the individual Defendants, and individual Defendant's motions to dismiss the third cause of action (Doc. 37) and the fourth cause of action (Docs. 39-42) are denied as moot.  Leave to amend is denied.

## II. BACKGROUND

**A. Procedural History**

On January 6, 2014, Allford filed a complaint seeking damages and injunctive relief due to alleged discrimination and retaliation on the part of Defendants.  Doc. 1.  Defendants filed and served a motion to dismiss on August 14, 2014.  Doc. 14.  Allford responded by filing his First Amended Complaint ("FAC") on September 4, 2014.  Doc. 17.  Based on the FAC, the Court denied the motion to dismiss as moot.  Doc. 18.  Allford's FAC alleged the following grounds for relief: 1) a claim of deprivation of rights secured by the Constitution pursuant to 42 U.S.C. § 1983 against individual Defendants; 2) a claim of employment discrimination and retaliation in violation of the Americans with Disabilities Act against Defendants; 3) a claim of employment discrimination in violation of FEHA against the OIG; 4) a claim of retaliation in violation of FEHA against the OIG; 5) a claim of harassment in violation of FEHA against Defendants; and 6) a claim of conspiracy to deprive Allford of rights secured by the California Unruh Act against Defendants.  Doc. 17, 24-34.

On October 23, 2014, Defendants filed motions to dismiss Allford's first, second, fifth, and sixth claims.  Docs 21-25.  Individual Defendants filed motions to dismiss the first and second claims.  Doc. 22, 3.  The OIG filed a motion to dismiss the second claim.  Doc. 21, 1.  Gordon, Spurling, and Wesley filed motions to dismiss the fifth claim.  Docs. 23-25.  On November 10, 2014, Allford filed a motion in opposition to Defendants' motions.  Doc. 28.  Defendants replied.

Doc. 29.

On May 22, 2015, the Court issued an order dismissing the second and sixth causes of action with prejudice. Doc. 33, 36:1-18. Conversely, the May 22, 2015 order dismissed, with leave to amend, the first and fifth causes of action. Id. at 35:24-36:15. Allford based his first cause of action, the section 1983 claim, in the FAC upon retaliation against him after he "exercised his rights to speak out against unlawful employment discrimination." Doc. 28, 4:27-5:1. Plaintiff "allege[d] four different occasions when [he] engaged in speech that opposed practices at the OIG: 1) Plaintiff voiced opposition to Gordon based on her inquiry into the details of Plaintiff's TB Test; 2) Plaintiff informed Wesley that he opposed any sharing of his mental or medical records with other employees at the OIG; 3) Plaintiff filed a formal complaint with the EEOC opposing Barton's disclosure of Plaintiff's perceived mental and physical disability to other employees; 4) Plaintiff demanded Barton secure Plaintiff's confidential personnel medical records that were available for other OIG employees to view." Doc. 33, 20:19-25. The Court found that this failed to state a claim under section 1983 for violations of his right to free speech "[b]ecause the content of Plaintiff's speech focuses only on his particular situation, this tends to indicate his speech relates to a personal grievance and is not a matter of public concern. The form and context of Plaintiff's speech also indicate Plaintiff was not speaking on a matter of public concern. The form of Plaintiff's speech was private in nature. Plaintiff restricted his communication to other employees within the OIG and to the caseworkers at the EEOC, as opposed to announcing the improper practices publicly." Id. at 21:23-25.

For the fifth cause of action, the FAC alleged against Defendant Gordon that he inquired into the details of Allford's TB test, scrutinized Allford's time records, admonished Allford for foul and inappropriate language, downgraded Allford's performance evaluation, denied Allford's request for use of a private car, denied Allford's request to attend a meeting by phone, and denied Allford's request to travel to a job site. Id. at 28:8-14. The Court reasoned that scrutinizing time records, admonishing for foul language, downgrading performance evaluation, and inquiring about a TB test failed to state a claim against Defendant Gordon, Allford's supervisor, because this conduct was necessary "to carry out the legitimate objectives of personnel management." Id. at

33:2-7.  Additionally, the inquiry into Allford's TB test was too isolated of an act to create an abusive work environment necessary for actionable harassment.  Id. at 29:17-22.  Lastly, the Court found that the allegations of attempts to adopt and enforce new employment policies and of denials of Allford's requests to use a private car, to attend a meeting by phone, and to travel to a job site failed to state a claim because Allford "fail[ed] to allege Gordon's conduct was motivated 'because of' Plaintiff's perceived 'physical disability [or] mental disability.'"  Id. at 29:23-27.  Additionally, this conduct was not actionable because it is within the scope of necessary job performance.  Id. at 30:2-5.

Against Defendant Spurling, the FAC alleged on the fifth cause of action that Spurling created a hostile work environment that included repeated negative comments and attempts to adopt and enforce new employment policies that made it difficult for Allford to perform his employment duties.  Id. at 30:15-16.  The Court found that these allegations were too vague and conclusory to demonstrate conduct that is "severe or pervasive" as necessary to "create[] an abusive working environment."  Id. at 30:19-21.

Finally, the FAC alleged against Defendant Wesley that he instructed Gordon to scrutinize Allford's time records, criticized Allford's time records and Allford's performance of his duties, and responded to Allford's concerns about the OIG sharing confidential medical information in a hostile and threatening tone.  Id. at 30:26-31:1.  The Court found that Allford's first allegation, that Wesley instructed Gordon to scrutinize Allford's timekeeping and criticised Allford's time records, failed to state a claim because this conduct constituted personnel management.  Id. at 31:6-10.  This conduct further failed to state a claim because Allford failed to allege sufficient facts to raise an inference that Wesley's criticism of Allford's work was motivated by animus or hostility towards Allford's perceived medical or mental condition.  Id. at 32:1-4.

On June 19, 2015, Allford filed the SAC.  Doc. 35.  The SAC has four causes of action: 1) deprivation of rights secured by First Amendment against the individual Defendants; 2) employment discrimination in violation of FEHA against the OIG; 3) retaliation in violation of FEHA against the Defendants; and 4) harassment in violation of FEHA against the Defendants.  Id.  Defendants Barton, Wesley, Spurling, and Gordon filed a motion to dismiss the first and third

1   causes of action pursuant to Rule 12(b)(6).  Doc. 37.  Defendants Barton, Gordon, Wesley, and

2   Spurling each filed their own individual motion to dismiss Allford's fourth cause of action

3   pursuant to Rule 12(b)(6).  Docs. 39-42.  Defendant OIG filed a motion to dismiss Allford's

4   second, third, and fourth causes of action pursuant to Rule 12(b)(1).  Doc. 43.  On September 14,

5   2015, Allford filed an opposition to the motions to dismiss.  Doc. 48.  Defendants replied.  Doc.

6   50.  The hearing on the motions to dismiss was vacated, and the matter was submitted for decision

7   on the papers without oral arguments.  Doc. 51.

8

9   **B. Factual Allegations in the SAC**

10          Allford was employed by the OIG as a Special Assistant Inspector General beginning on

11  July 12, 2005.  Doc. 35, 3:17-19.  From this time until February 2012, Allford's employment

12  performance was "almost invariably reviewed favorably."  Id. at 5:6-8.  In March 2009, after a

13  period of illness involving a serious medical condition, Allford resumed full duties at the OIG.  Id.

14  at 5:10-14.  The medical condition was known to Barton, Gordon, Spurling, and Wesley.  Id. at

15  5:10-12.  Barton was the Senior Assistant Inspector General, Central Region, Acting Inspector, or

16  Inspector General at the OIG, Wesley was the Chief Deputy Inspector General, or Acting Deputy

17  Inspector General at the OIG, Spurling was General Counsel at the OIG, and Gordon was the

18  Senior Assistant Inspector General, Central Region, at the OIG.  Id. at 3:25-4:5.

19          On March 24, 2009, Barton emailed Allford referencing Allford's release by his physician

20  for return to full duty and notifying Allford that he was returning to full, unrestricted duty.  Id. at

21  5:14-20.  This confidential email was placed on a non-restricted computer file maintained by the

22  OIG to which all employees had access.  Id. at 5:20-23.  Without providing any specific detail on

23  the content of the communications, Allford alleges that email, personal meetings, and telephone

24  communications between Barton, Wesley, Spurling, and Gordon indicated that these defendants

25  believed, because of Barton's March 24, 2009 email, that Allford's medical condition had

26  "permanently reduced his capacity to perform the duties of an SAID adequately."  Id. at 7:3-15.

27  Barton, Wesley, Spurling, and Gordon subsequently over-supervised Allford in "a loud, public,

28  and demeaning manner."  Id. at 7:15-20.  This level of oversight was not imposed on any other

1   SAIG.  Id. at 7:20-23.  Barton further allegedly shared Allford's medical records that were with

2   the OIG human resources department with Spurling, Wesley, and Gordon.  Id. at 8:6-19.

3        On August 15, 2011, Wesley emailed Allford admonishing him for taking action in an

4   administrative hearing involving a Vertical Advocate who prosecuted custodial mistreatment of

5   CDCR inmates.  Id. at 9:7-15.  Prior to his illness, Allford's experience had been that the OIG

6   expected Allford to intervene when the Vertical Advocate's performance was sufficiently deficient

7   as to render the administrative hearing virtually worthless.  Id. at 9:15-27.  Allford believed that

8   Wesley had admonished him because Wesley was acting on a misperception of Allford's

9   perceived disability.  Id. at 10:1-11.

10        On March 1, 2012, in a written memorandum, Allford advised Hermelinda Jaimes, who

11   was responsible for maintaining medical records at OIG, that Gordon was not authorized to

12   receive information about Allford's most recent tuberculin test beyond that the test was negative

13   and Allford was in compliance.  Id. at 10:11-21.  In the memorandum, Allford expressed

14   disappointment that an earlier request that his tuberculin test be kept confidential had been

15   ignored.  Id. at 10:23-27.

16        In a subsequent conversation, Wesley indicated that the dates of medical treatment were

17   not "confidential medical records" and were not entitled to the protection Allford demanded.  Id.

18   at 11:4-9.  Wesley advised Allford that if Allford persisted in complaining about the disclosure of

19   medical records that it may lead to employment problems for Allford.  Id. at 11:9-11.  Wesley

20   reprimanded Allford "for going outside the chain of command" with his complaint to Jaimes and

21   her supervisor and ordered Allford to put his concerns in writing addressed to Wesley.  Id. at

22   11:12-15.

23        Allford subsequently wrote a memorandum to Wesley on March 2, 2012.  Id. at 11:15-17.

24   Allford expressed concern about the disclosure of confidential medical records and disagreed that

25   he had gone outside the chain of command.  Id. at 11:19-24.  He advised Wesley that he regarded

26   this as an institutional issue and that he was doing this to make sure that all OIG employees could

27   feel secure in the confidentiality of their medical records.  Id. at 11:24-12:2.

28        In March 2012, Allford became aware that Barton had disclosed confidential medical and

6

1   personnel information from his official personnel file to approximately seven other employees.  Id.

2   at 12:3-9.  On March 5, 2012, Allford emailed Barton demanding he explain the unlawful

3   disclosures of his personnel medical records.  Id. at 12:10-14.  Barton did not provide a

4   substantive reply.  Id. at 12:14-15.

5        Allford then filed a complaint of discrimination with the California Department of Fair

6   Employment and Housing, the Equal Employment Opportunity Commission, and the State Board

7   of Audits alleging violations of his right to privacy/confidentiality in the workplace and retaliation

8   by members of the OIG.  Id. at 12:16-22.  Allford's "stated purpose" was "to vindicate Allford's

9   own right to confidentiality in his medical records and to deter future such violations of those

10  rights by the OIG against himself or other OIG employees."  Id. at 12:21-25.  The Attorney

11  General's office concluded its investigation into Allford's complaint in July 2012 because it could

12  not substantiate the allegations.  Id. at 13:11-15.

13       A neurological report, generated on April 11, 2012, declared Allford fully recovered from

14  his previous mental and/or physical disability and removed any doubt as to his ability to perform

15  the essential functions of his employment.  Id. at 13:3-10.  On August 10, 2012 Barton placed

16  Allford on Administrative Time Off ("ATO") pending investigation into alleged acts of

17  misconduct by Allford related to his workplace privacy complaints.  Id. at 13:21-26.

18       On August 24, 2012, Barton "caused" Spurling to prepare and serve on Allford a Notice of

19  Adverse Action ("NOAA") alleging that Allford had violated California Code Section 19572 for

20  poor performance and behavior during his employment.  Id. at 13:27-14:9.  Allford suffered a five

21  day work suspension as a result of the NOAA.  Id. at 14:16-17.

22       Upon his return to work in September, 2012, Allford alleges he became the target of

23  "continuing, persistent harassment by Barton, Wesley, and Gordon."  Id. at 14:17-20.  On

24  September 11, 2012, Barton substantially reduced Allford's assignments and restricted him from

25  participation in the Contraband Watch Policy, the Hunger Strike Policy, or any other special issues

26  legal research projects without Barton's express permission.  Id. at 14:21-27.  On September 13,

27  2012, Gordon denied Allford's request to use his own private vehicle for OIG duties, despite that

28  all other OIG employees were routinely permitted to use their own private vehicles upon request.

1  Id. at 15:1-14.  On September 12 and 13, 2012, Barton admonished Allford for communicating

2  with him after receiving an email that was sent to him as a courtesy copy.  Id. at 14:15-19.

3       On September 21, 2012, Allford found his private, confidential personnel medical

4  information on an unsecured OIG computer screen.  Id. at 15:20-23.  He emailed Barton, Wesley,

5  and the human resources department of this problem and demanded that the information be

6  removed to a secure area.  Id. at 15:22-27.  The demand was ignored.  Id. at 15:26-27.  On October

7  8, 2012, Allford emailed Barton and Wesley that he had not received a reply to his September 21,

8  2012 email.  Id. at 16:1-5.  On the same day, Barton responded by email that he replied

9  spontaneously and immediately to Allford's September 21, 2012 email and threatened Allford

10  with punitive action.  Id. at 16:6-10.  On October 9, 2012, Barton responded by email to Allford

11  advising him that he had been insubordinate in reporting his concern about his medical record

12  privacy to Barton and forbidding him from using the OIG computer system to make any further

13  complaints.  Id. at 16:11-21.

14       On October 10, 2012, Gordon admonished Allford for missing a meeting that Gordon had

15  denied Allford's request to attend telephonically and had required physical presence for.  Id. at

16  16:23-17:3.  On October 11, 2012, Wesley admonished Allford for "replying to Barton's order

17  that he not communicate directly with Barton about his concerns regarding the violation of his

18  medical record privacy and accused Allford of being insubordinate for doing so."  Id. at 17:5-9.

19       On December 7, 2012, Allford emailed Gordon about his understanding that she had

20  verbally approved his trip to California Mens Colony at San Luis Obispo, California.  Id. at

21  17:10-14.  In that email, Allford asked Gordon to advise him if he misunderstood her approval.

22  Gordon did not respond.  Id. at 17:14-15.  However, Gordon subsequently admonished Allford for

23  making the trip.  Id. at 17:17-18.

24       In January 2013, Gordon accused Allford of creating a duplicate CMS record that needed

25  to be deleted and interfering with her placement of an inmate on contraband surveillance watch.

26  Id. at 17:19-24.  Allford alleged that Gordon was motivated in making this accusation due to a

27  prejudiced perception of his disability.  Id. at 17:25-18:3.

28       On March 19, 2013, Allford served upon the OIG a Summons and Complaint filed in the

1    Superior Court of California, Kern County, alleging discriminatory and retaliatory practices

2    against the OIG, Barton, Spurling, Wesley, and Gordon. <u>Id</u>. at 20:1-6.  Within 24 hours of this

3    service, Barton, Spurling, Wesley, and Gordon prepared and served a Notice on Allford that he

4    was the subject of an investigation into the misuse of state time and property. <u>Id</u>. at 20:7-13.  On

5    April 25, 2013, a Notice of Adverse Action was served on Allford seeking to terminate Allford's

6    employment with the OIG. <u>Id</u>. at 20:15-18.  The original notice had one count of misconduct,

7    while the Notice of Adverse Action had ten counts. <u>Id</u>. at 20:17-20.  One was that Allford had

8    damaged state property because a key had broken off in a lock in Allford's desk.  Allford alleges

9    that this accusation was false because the key was defective and situation would normally be a

10   maintenance issue. <u>Id</u>. at 20:27-21:4.  Allford was subsequently dismissed involuntarily from the

11   OIG on May 7, 2013. <u>Id</u>. at 21:11-14.

12

13                              **III. LEGAL STANDARD**

14   **A. Rule 12(b)(6)**

15        A complaint must contain "a short and plain statement of the claim showing that the

16   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This rule does not require a claimant to set

17   out in detail the facts upon which he bases his claim. <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).

18   The pleadings need only give the opposing party fair notice of a claim and the claim's basis. <u>Id</u>. at

19   47; <u>Sagana v. Tenorio</u>, 384 F.3d 731, 736 (9th Cir. 2004); <u>Fontana v. Haskin</u>, 262 F.3d 871, 877

20   (9th Cir. 2001).  However, where the plaintiff fails to allege "enough facts to state a claim to relief

21   that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to

22   state a claim upon which relief may be granted. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544,

23   570 (2007); <u>see</u> Fed. R. Civ. P. 12(b)(6).  A dismissal for failure to state a claim brought under

24   Rule 12(b)(6) may be based on either: the lack of a cognizable legal theory, or on the absence of

25   sufficient facts alleged under a cognizable legal theory. <u>Johnson v. Riverside Healthcare Sys., LP</u>,

26   534 F.3d 1116, 1121 (9th Cir. 2008); <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).

27        When the court reviews a complaint under Rule 12(b)(6), all of the complaint's material

28   allegations of fact are taken as true, and the facts are construed in the light most favorable to the

1   non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo

2   v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  However, the court need not accept conclusory

3   allegations, unwarranted deductions of fact, or unreasonable inferences.  Daniels-Hall v. National

4   Educ. Ass'n., 629 F.3d 992, 998 (9th Cir. 2010).  Although they may provide the framework of a

5   complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a

6   cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556

7   U.S. 662, 677-79 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136 (9th Cir.

8   2003).

9         If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without

10   prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend

11   even if no request to amend the pleading was made, unless it determines that the pleading could

12   not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th

13   Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  In other

14   words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX,

15   Inc., 298 F.3d 893, 898 (9th Cir. 2002).

16

17   **B. Rule 12(b)(1)**

18         Rule 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction.

19   Fed. R. Civ. P. 12(b)(1).  It is a fundamental precept that federal courts are courts of limited

20   jurisdiction.  Vacek v. United States Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006).  Limits

21   upon federal jurisdiction must not be disregarded or evaded.  Owen Equipment & Erection Co. v.

22   Kroger, 437 U.S. 365, 374 (1978).  It is presumed that a cause lies outside this limited jurisdiction,

23   and the burden of establishing the contrary rests upon the party asserting jurisdiction.  Kokkonen

24   v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Vacek, 447 F.3d at 1250.  Rule 12(b)(1)

25   motions may be either facial, where the inquiry is confined to the allegations in the complaint, or

26   factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  Wolfe v.

27   Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Safe Air For Everyone v. Meyer, 373 F.3d 1035,

28   1039 (9th Cir. 2004); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d 1036, 1040

1    n. 2 (9th Cir. 2003).  When a defendant challenges jurisdiction facially, all material allegations in

2    the complaint are assumed true, and the question for the court is whether the lack of federal

3    jurisdiction appears from the face of the pleading itself.  See Wolfe, 392 F.3d at 362; Meyer, 373

4    F.3d at 1039.  However, courts do not accept the truth of legal conclusions merely because they

5    are cast in the form of factual allegations.  Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009).

6

7                                    **IV. DISCUSSION**

8    **A. Deprivation of Rights Secured by Section 1983 – Plaintiff's First Cause of Action**

9             Allford's first cause of action seeks recovery against individual Defendants in their

10   personal capacity under 42 U.S.C. § 1983 for "retaliatory actions . . . [that] deprived Allford . . . of

11   the rights secured to him by Amendment I of the United States Constitution."  Doc. 35, 2:24-3:2,

12   24:1-4.  Section 1983 provides, "[e]very person who, under color of any statute, ordinance,

13   regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

14   causes to be subjected, any citizen of the United States. . . to the deprivation of any rights,

15   privileges, or immunities secured by the Constitution and laws, shall be liable. . . ."  42 U.S.C. §

16   1983 (1996).

17            "To state a claim under [section] 1983, a plaintiff must allege two essential elements: (1)

18   that a right secured by the Constitution or laws of the United States was violated, and (2) that the

19   alleged violation was committed by a person acting under the color of State law."  Long v. County

20   of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  "It is well settled that section 1983

21   'provides a cause of action for violations of federal statutes as well as the Constitution.'"  Buckley

22   v. City of Redding, Cal., 66 F.3d 188, 190 (9th Cir. 1995) (quoting Wilder v. Virginia Hosp.

23   Ass'n, 496 U.S. 498, 508 (1990)).  Section 1983 is a broad statute that provides a "mechanism to

24   enforce" rights secured by the constitution or federal statute.  Buckley, 66 F.3d at 190.  However,

25   there must be an affirmative link between the defendants' actions and the claimed deprivations.

26   See Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 692 (1978) (concluding

27   "Congress did not intend [section] 1983 liability to attach where ... causation [is] absent").

28            Allford bases his section 1983 claim on the First Amendment.  "[A] State cannot condition

                                              11

public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983).  The Supreme Court has sought to seek a "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (quoting Pickering v. Board of Education, 391 U.S. 563, 568 (1968)).  When a public employee alleges his or her First Amendment rights have been violated by an employer, the Court applies a five-part test to balance the interests of the employee with the interests of the State, including a determination of: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009).  The plaintiff has the burden of persuasion in the first three parts: speech relating to matter of public concern, speaking as a private citizen, and speech being a substantial or motivating factor in the adverse action.  Id. at 1070-71. Thus, for Allford's section 1983 claim to be based on an infringement of his Constitutional right to freedom of speech, his complaint must allege facts sufficient to satisfy these three tests.

The Court, however, already determined in its May 22, 2015 order that Allford sufficiently alleged facts in his FAC that he was speaking as a private citizen and that his speech was a substantial or motivating factor in an adverse action.  Doc. 33, 22:14-26:12.  There is no reason to depart from this ruling for the SAC.  Instead, individual Defendants filed a motion to dismiss the SAC's first cause of action on the basis that: 1) Allford's complaints to the OIG are not protected speech under the First Amendment because the complaints did not involve a matter of public concern; and 2) Allford has not alleged sufficient facts to state a claim for First Amendment retaliation against Defendants Barton, Wesley, Spurling, and Gordon.  Doc 37, 7:7-13:19.

**1. Matter of Public Concern**

1    "Speech that concerns issues about which information is needed or appropriate to enable

2  the members of society to make informed decisions about the operation of their government merits

3  the highest degree of first amendment protection."  Alpha Energy Savers, Inc. v. Hansen, 381 F.3d

4  917, 924 (9th Cir. 2004) (internal quotes removed).  This is referred to as speech on a matter of

5  public concern.  "'Whether an employee's speech addresses a matter of public concern must be

6  determined by the content, form, and context of a given statement, as revealed by the whole

7  record.'"  Johnson v. Multnomah County, Or., 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick,

8  461 U.S. at 147–48).  The content of the speech is the "greatest single factor" when determining

9  whether an employee's speech is a matter of public concern.  Alpha Energy Savers, Inc., 381 F.3d

10 at 925.

11    The FAC alleged four different occasions when Allford engaged in speech that opposed

12 practices at the OIG: 1) Allford voiced opposition to Gordon based on her inquiry into the details

13 of his TB Test; 2) Allford informed Wesley that he opposed any sharing of his mental or medical

14 records with other employees at the OIG; 3) Allford filed a formal complaint with the EEOC

15 opposing Barton's disclosure of Allford's perceived mental and physical disability to other

16 employees; 4) Allford demanded Barton secure Allford's confidential personnel medical records

17 that were available for other OIG employees to view.  Doc. 17, 7-18.

18    This Court found in its prior ruling on the FAC that the context, form, and content of the

19 alleged speech all indicated Allford was not speaking on a matter of public concern:

20    "[T]he content of Plaintiff's speech focuses on his own particular situation.
      Plaintiff does not allege the medical information of other OIG employees was
21    improperly shared, instead, his concerns only related to his medical information.
      This, on its own, does not indicate there is serious misconduct on the part of the
22    OIG and would likely not be relevant to the public when evaluating the overall
      performance of the OIG. . . .  The form and context of Plaintiff's speech also
23    indicate Plaintiff was not speaking on a matter of public concern.  The form of
      Plaintiff's speech was private in nature.  Plaintiff restricted his communication to
24    other employees within the OIG and to the caseworkers at the EEOC, as opposed to
      announcing the improper practices publicly."
25
   Doc. 33.
26
      In attempt to remedy these defects, Allford now also alleges in the SAC that 1) his petition
27
   to the government for redress of his grievances was to preserve his rights as well as the OIG
28

13

1   employees' rights to confidentiality of medical and disciplinary records, 2) that in a memorandum

2   dated March 2, 2012, he advised Wesley that he regarded the confidentiality of medical records to

3   be an institutional issue and that he would be communicating with Barton to make sure that all

4   OIG employees could feel secure in the confidentiality of their medical records, and 3) that

5   Allford's stated purpose in filing charges of discrimination with the Department of Fair

6   Employment and Housing, the Equal Employment Opportunity Commission, and the State Board

7   of Audits was to vindicate his own rights to confidentiality in his medical records and to deter

8   future such violations of those rights by the OIG against himself or other OIG employees.  Doc.

9   35, 8:1-5, 11:24-25:2, 12:16-25.

10          These allegations, however, still all fail to indicate that Allford was speaking on a matter of

11   public concern.  Speech is considered to "involve a matter of public concern when it can be fairly

12   considered to relate to 'any matter of political, social, or other concern to the community.'"

13   Johnson, 48 F.3d at 422 (quoting Connick, 461 U.S. at 142).  The content of Allford's speech still

14   focuses on his own particular situation in the alleged unlawful disclosure of his own medical

15   records.  Allford still does not allege that any other employees medical information was

16   improperly disclosed.  The form of his speech is still private in nature.  See Doc. 33, 20:8-22:12.

17          Allford's new allegations all revolve around alleging that his motive was to help other

18   employees by deterring future violations.  However, "motive should not be used as a litmus test

19   for public concern; rather, content is the greatest single factor in the Connick inquiry."  Havekost

20   v. U.S. Dep't of the Navy, 925 F.2d 316, 318 (9th Cir. 1991) (internal quotation marks omitted);

21   accord Roe v. City of San Diego, 356 F.3d 1108, 1122 (9th Cir. 2004).  Connick, the Supreme

22   Court's leading case in this area, illustrates the role that motive plays in the public concern

23   analysis.  461 U.S. at 138; see also Alpha Energy Savers, Inc., 381 F.3d at 925.  In Connick, a

24   public employee alleged that her supervisors retaliated against her for distributing a questionnaire

25   to coworkers.  The Court concluded the employee's motive was, at least in part, "to gather

26   ammunition for another round of controversy" in her individual personnel dispute.  Connick, 461

27   U.S. at 148.  It held that the questions pertaining to office morale, the need for a grievance

28   committee, and the office transfer policy did not address matters of public concern and, thus,

14

1    declined to consider them further.  However, it held that one of the questions—whether employees

2    felt pressure to work on political campaigns—did address "a matter of interest to the community,"

3    and proceeded to apply the balancing test to that part of the claim.  Id. at 149.  If motive alone

4    were critical, the Court would not have treated the political pressure question differently from the

5    others listed in the questionnaire.  Accordingly, Allford's new allegations relating to his alleged

6    altruistic motive do not provide a reason for departing from this Court's May 22, 2015.  The

7    context, form, and content of the alleged speech still all indicate that Allford was not speaking on

8    a matter of public concern.  See Doc. 33, 20:8-22:12.  Consequently, Allford's complaints to the

9    OIG are not protected speech and Allford has failed to state a claim for deprivation of his First

10   Amendment rights under section 1983.

11          What's more, in their motion to dismiss, individual Defendants have refuted the veracity of

12   Allford's new allegations regarding his motive.  Doc. 37.  The SAC alleges that in a memorandum

13   dated March 2, 2012 Allford advised Wesley that he regarded the confidentiality of medical

14   records to be an "institutional issue" and that he would be communicating with Barton to make

15   sure that all OIG employees could feel secure in the confidentiality of their medical records.  The

16   actual memorandum, however, makes no reference to "institutional issue" or that he would be

17   communicating with Barton to make sure that all OIG employees could feel secure in the

18   confidentiality of their medical records.[1]  Moreover, multiple contemporaneous emails from

19   Allford all indicate that his motive for pursuing grievances against the OIG was to remedy his own

20   particular situation.[2]  In deciding on a Rule 12(b)(6) motion to dismiss, the court need not accept

21   unwarranted deductions of fact or unreasonable inferences.  See Daniels-Hall, 629 F.3d at 998.

22   Here, the individual Defendants have patently refuted Allford's allegation related to his March 2,

---

[1] Individual Defendants have attached the March 2, 2012 memorandum as Exhibit B to their Request for Judicial Notice.  Doc. 38-2.  If a plaintiff fails to attach to the complaint documents on which it is based, defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds).

[2] The Court takes judicial notice of Exhibit A to the individual Defendants Request for Judicial Notice.  Doc. 38-1.  These documents are part of the record in Superior Court of California, Kern County, filed in Michael G. Allford v. State of California, et al., Case No. S-1500-CV-278848-LHB.  "Federal courts may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'"  Cactus Corner, LLC v. U.S. Dept. of Agric., 346 F.Supp.2d 1075, 1092 (E.D. Cal. 2004) (quoting United States ex rel Robinson Rancheria Citizens Council v. Bornia, Inc., 971 F.3d 233, 248 (9th Cir. 1992)).

2011[2] memorandum and have presented evidence that contradicts his newly alleged motive for pursuing his grievances against the OIG.  Regardless, even taken as true, Allford's allegations in his SAC fail to sufficiently allege that he was speaking on a matter of public concern.  Allford has already filed two amended complaints.  The Court finds that further amendment to the complaint is not warranted.  The Court dismisses Allford's first cause of action against individual Defendants with prejudice.

**B. Second, Third, and Fourth Causes of Action Against the OIG**

The OIG has filed a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) the second, third, and fourth causes of action on the grounds that the OIG, a state agency, is immune from suit in federal court.  Doc. 43.  The second, third, and fourth causes of action are the only remaining causes of action against the OIG and are all brought under California's Fair Employment and Housing Act ("FEHA").

A party may move to dismiss on Eleventh Amendment sovereign immunity grounds pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.  Proctor v. United States, 781 F.2d 752, 753 (9th Cir. 1986).  The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state or by Citizens or Subjects of any foreign state."  The Eleventh Amendment prohibits federal courts from hearing suits brought against a state by its own citizens or citizens of other states.  Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  "Although the exact limits of the Eleventh Amendment are difficult to determine, it is clear that the Eleventh Amendment prohibits actions for damages against state agencies when Congress has failed to express a contrary intent."  Belanger v. Madera Unified School Dist., 963 F.2d 248, 250 (9th Cir.1992).  Both the Supreme Court and the Ninth Circuit have made clear that the rationale for Eleventh Amendment immunity applies with particular forces to state law claims.  See Gilbreath v. Cutter Biological, Inc., 931

1    F.2d 1320, 1326 (9th Cir. 1991) (dismissing state law claims against state defendants on Eleventh

2    Amendment grounds and stating that "it is difficult to think of a greater intrusion in state

3    sovereignty that when federal courts instruct state officials on how to conform their conduct to

4    state law" (quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984))).

5           The Court concludes that it lacks jurisdiction over Allford's remaining state law claims

6    against the OIG.  The OIG is an independent government entity that qualifies as an agency of the

7    State of California under California Government Code section 11000.  See Cal. Penal Code §

8    6125; Cal. Gov. Code §§ 11000, 82049.  Furthermore, "California has not waived its immunity

9    from FEHA actions in federal court."  Freeman v. Oakland Unified School District, 179 F.3d 846,

10   847 (9th Cir. 1999).  Accordingly, the OIG is immune from the present suit under the Eleventh

11   Amendment.  The Court grants the OIG's motion to dismiss the second, third, and fourth causes of

12   action without leave to amend.

13

14   **C. Third and Fourth Causes of Action Against Individual Defendants**

15          The basis for jurisdiction in this Court of Allford's complaint was the presence of a federal

16   question.  However, the Court has now dismissed all of Allford's federal claims.  When

17   jurisdiction is based on a federal question, dismissal of the federal claims does not deprive a

18   federal court of the power to adjudicate remaining pendent state claims.  Sparta Surgical Corp. v.

19   Nat'l Ass'n of Securities Dealers, Inc. et al., 159 F.3d 1209, 1213 (9th Cir. 1998).  Nevertheless,

20   "pendent jurisdiction is a doctrine of discretion," United Mine Workers of America v. Gibbs, 383

21   U.S. 715, 726 (9th Cir. 1966), and there is a distinction between the power to hear state law claims

22   and the discretionary exercise of that power.  Carnegie–Mellon University v. Cohill, 484 U.S. 343,

23   349–50 (1988).  In order to decide whether to exercise jurisdiction over pendent state law claims, a

24   district court should "consider and weigh in each case, and at every stage of the litigation, the

25   values of judicial economy, convenience, fairness, and comity."  Id.  "In the usual case in which

26   all federal-law claims are eliminated before trial, the balance of factors . . . will point toward

27   declining to exercise jurisdiction over the remaining state-law claims."  Acri v. Varian Associates,

28   114 F.3d 999, 1001 (9th Cir. 1997) (en banc ) (citing Carnegie–Mellon, 484 U.S. at 350 n. 7).  In

17

this case, the federal claims have been eliminated before trial and only state law claims remain. Furthermore, the Court does not have subject-matter jurisdiction to hear the state law claims in the second, third, and fourth causes of action against the OIG.  Judicial economy, convenience, fairness, and comity all point to a comprehensive resolution of all the state law claims of the second, third, and fourth causes of action against both the OIG and the individual Defendants in state court.  Accordingly, the Court declines to exercise pendent jurisdiction over the third and fourth causes of action against the individual Defendants.  These claims are dismissed without leave to amend.

## V. ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.  Individual Defendant's motion to dismiss the first cause of action (Doc. 37) for failure to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983 is GRANTED, dismissed with prejudice;

2.  The OIG's motion to dismiss the second, third, and fourth causes of action (Doc. 43) for lack of subject matter jurisdiction is GRANTED, leave to amend is denied;

3.  As all federal claims have been dismissed, the Court declines to exercise pendent jurisdiction over the remaining state law claims and thus dismisses without leave to amend the third and fourth causes of action against the individual Defendants; and

4.  Individual Defendant's motions to dismiss the third cause of action (Doc. 37) and the fourth cause of action (Docs. 39-42) are denied as moot.

5.  The Clerk is directed to close this action.

IT IS SO ORDERED.

Dated:   October 23, 2015                        _____

                                                                 SENIOR  DISTRICT  JUDGE